# DE HAAS *v.* BUNN.

1. The estate of one claiming by executory devise during the continuance of the previous estate, is the subject of levy and sale.
2. A. being devisee in fee of a moiety of a house, and executory devisee of the other moiety, a fieri facias was levied on both estates and returned unsold for want of buyers; a venditioni reciting this levy, commanded a sale of the vested moiety; the return was of a sale in obedience thereto, and the sheriff conveyed both estates.—*Held*, that both moieties passed. For the court will amend the writ according to the levy, it appearing clearly from the deed, that all the land levied on was actually sold, and forty years having elapsed.
3. Devise to my daughter A. for life, remainder to her children in fee, A. then having a child, " provided if she die without issue to my son B.," an executory devise, and not too remote, the word issue being confined to children previously referred to. Per GIBSON, C. J., and KENNEDY, J.

CERTIFICATE to the Nisi Prius.

*March* 31.—J. Philip De Haas in 1786 devised, inter alia, one moiety of a house and lot to his son John Philip De Haas in fee, the other moiety to his daughter H. Craig, wife of W. C., for life, and from and after her death, to such child or children as she now hath, or hereafter may have, their heirs and assigns, as tenants in common; provided " if my said daughter shall happen to die without issue, that then, and in such case, the same shall go to my said son John Philip De Haas, his heirs and assigns for ever."

On a judgment against J. P. De Haas the younger, in 1806, a fieri facias issued, under which a levy was made on his undivided moiety, and his right and title to the chance of the reversion of the other half of said house, which the sheriff returned, remained in his hands for want of buyers; a venditioni, reciting this return at length, issued, whereby the sheriff was commanded to sell the undivided moiety, or half part of the house and lot with the appurtenances. The return recited a sale, in obedience to the within writ, for an amount greater than the judgment. The sheriff's deed, reciting the fieri facias, the return, the venditioni exponas, and sale under the said recited writ, conveyed the undivided moiety, and the chance to the reversion of the other moiety under the authority of the said writs, &c., to those under whom defendant holds. In 1823, J. P. De H. Craig, who was living in 1786, the son of H. Craig, the daughter of testator, conveyed his estate in the undivided moiety to those under whom defendant claims, and died in 1829 without issue. H. Craig died in 1834 without issue surviving her; John P. De Haas the younger died in 1827, of whom the plaintiffs are the heirs. This suit was for the reversionary moiety. At the trial before Kennedy, J., at Nisi Prius, his honour directed a verdict for the plaintiff.

*Kennedy* and *Sergeant*, for plaintiff in error.—There is no estate by implication in H. Craig under this will; nor will the children take an estate-tail, but a fee determinable by the proviso—an executory devise. 7 East, 521; 6 T. R. 30; 3 Id. 484. These words, *failure of issue*, refer to such persons as may claim under H. Craig, in which case the limitation to the plaintiff is too remote. But if it be a remainder after a determination of the estate of H. Craig, Waddell *v.* Raton, 5 Rawle, 231; Wills *v.* Rutter, 3 Whart. 208, 226, the devise over was a vested remainder in J. Craig in fee, and as such has passed to us under our deed; for an inquest being unnecessary in such case, 2 Miles, 156, act of 1705, a venditioni was not required, nor was it proper to effect a sale of such an interest. It passed under the fieri facias, as appears from the recital in the deed. It is plain the sale was deferred until the vested moiety could be sold under the venditioni exponas, for the benefit of the owner, and he certainly could not object here, having stood by and permitted the sale and application of the purchase money to his debts; and if he could not, neither can the plaintiff. This interest, and the right of the sheriff to sell it, is to be governed entirely by the rules in the case of personalty, lands being chattels for payment of debts in Pennsylvania, and there being no distinction in the form of proceeding against them until the act of 1705, directing an inquest and venditioni. Where this act has no operation, as here, it is the rule in case of chattels we are to look to. What is that? The levy governs; by it a right is vested in the creditor, 2 Lord Raym. 1073, and the sale may be after the return-day; this being so, this case is established by it; for, after the levy, the sale might be made at any time before or after a venditioni, Stroble *v.* Smith, 8 Watts, 280; no objection to the time of sale could be made after the acknowledgment of the deed. In fact, it must be made under this writ, for a new fieri facias cannot issue.

*St. Geo. Campbell* and *Meredith*, contrà.—There are two questions here: is the limitation over too remote, or has the sheriff's sale passed the title? It is immaterial whether the children of H. Craig took an estate-tail, remainder to the plaintiff, or by executory devise; one or the other it must be; if the devise be after an indefinite failure of issue, it is an estate-tail; and as that was never barred, we are entitled. But if, as we contend, the devise after failure of issue means after such issue as has been previously named, to wit, children, which is settled to be the construction in case of a devise after failure of issue following a devise to children, Goodright *v.* Dunham, 1 Doug. 264; Ginger *v.* White, Willes, 348; Mallone *v.* Taylor, 2 Russ. & Myl. 416; Jar-

man on Wills, 371; 2 Barn. & Cress. 926, the estate is good as an executory devise, and is not too remote. Was this then sold? There were two distinct estates in the same land; a contingent interest in one moiety, a vested one in the other. The levy was on both; but was there a sale? If there had been such as was supposed by the defendant, it would be void, being after the return-day, Cash *v.* Towzer, 1 Watts & Serg. 528; but can there be a presumption *against* the record? The sheriff on that, in his return to the fieri facias, says, he has *not* sold under it. After that return, can he sell? Can there be a sale under a returned writ? If not, was there a subsequent authority? The venditioni exponas does not command a sale, but of the vested interest; and unless the sale be commanded, it cannot be made, Sechrist *v.* Baskin, 7 Watts & Serg. 404. So without a venditioni, it is void, 4 Yeates, 212; or if the levy be set aside, and no new one, 2 Binn. 30. The delay has nothing to do with the case; our right did not accrue until after 1834; and assent of parties even will not cure such a defect, 4 Watts & Serg. 20. Whether the estate could be sold might have been doubted, Humphreys *v.*——, 1 Yeates, 427; Rickert *v.* Madeira, 1 Rawle, 325; Fisher *v.* Taylor, 2 Rawle, 33; Vaux *v.* Parke, 7 Watts & Serg. 19; but it can scarcely be considered an open question now.

There is a great distinction between the rules in case of realty and personalty; the levy and the venditioni are notices of an intention to sell the particular estate there mentioned. It was in the election of the party to sell both or either, and he has made it. The proceeds of the sale were greater than the judgment, and it cannot be supposed, contrary to the averments of the record itself, that more was sold than was ordered to be sold.

*April* 14. GIBSON, C. J.—It is unnecessary to determine the precise nature of the limitation over to John Philip De Haas, and I pretend not to express any opinion on the part of my brethren in regard to it. For myself, however, I may say, that I would feel no hesitation in pronouncing, that as the first limitation in the devise of a moiety of the property to his sister, Henrietta Craig, was for life, and the second was to such child or children as she then had or should have in fee, the further limitation over on the contingency of her dying without issue, the remainder in fee to the son having vested at the death of the testator, was an executory devise; and that it was not too remote; the generality of the word issue being restrained by the words child or children, has been satisfactorily shown by the authorities. The limitations to the daughter's children, and to her brother in the event of

her death without issue, were not concurrent contingent remainders depending on a contingency with a double aspect, on the happening of which the one or the other would exclusively vest, because the daughter's son was born in the lifetime of the testator; and as the fee was limited to him neither as an uncertain person, or on the happening of an uncertain event, it vested in him at the testator's death, so that there could be no further limitation of it except by executory devise. It would seem to me, therefore, that the son had a vested remainder in fee, to take effect in possession at his mother's death; and that his uncle had a good limitation in fee mounted on it by executory devise. This however is to be taken only as the opinion of my brother Kennedy and my own. If, however, this last limitation were defeated by the vesting of the fee in the son, the plaintiffs would have no pretence of title, because the defendants have the son's conveyance of all the estate that was in him.

But taking it, for the sake of the argument, that there was a good executory limitation to the uncle, was his contingent interest in it transferred to the purchaser at sheriff's sale, under whom also the defendants claim? It had not vested in interest at the time of the sale, as the son, who was the first devisee in fee, was still living. But it is entirely certain that such an interest may be transferred by assignment even at law, and consequently that it may be sold by execution. The only mere possibility that may not be so transferred, is a bare hope of succession to the property of another, such as may be entertained by an heir apparent. The point is discussed in Atherly on Marriage Settlements, p. 53, where the cases are collected; but it may not be amiss to refer particularly to Gurrall v. Wood, Willes, 211, in which an executory devise was held to be an existing interest, and not a bare possibility.

But was this existing interest sold pursuant to any authority or command in the writ of venditioni exponas? The return to the fieri facias contained an express affirmation that it had been seized in execution along with the moiety of the property devised immediately to the debtor himself. The command of the venditioni exponas, however, after truly reciting the levy, was to sell the debtor's vested interest in this moiety, without noticing his contingent interest under the executory devise. The sheriff returned that he had sold " the within described property," (described one way in the recital of the levy, and differently in the mandatory part of the writ;) but that he actually sold the contingent interest, as well as the vested one, is conclusively shown by his deed, in which each is expressly included. Why then should we not treat the omission of a special command to sell the contingent

interest, as a clerical omission amendable in the proper court, and consequently as actually amended here?

It is argued, that as the judgment creditor was not bound to sell the whole property seized, it is impossible to say, the præcipe for the venditioni exponas being lost, that he did not direct the writ to be issued for the sale of a moiety of the premises, supposing that it would produce enough to satisfy the debt. Had not the sheriff expressly conveyed the contingent interest in the other moiety also, a presumption would certainly arise that an authority to sell it had been purposely omitted; but it is inconceivable that the sheriff would have sold it had the fact been so, or that if he had been restrained by the judgment creditor, the fact would have escaped his recollection when he executed the deed. In point of truth, there cannot be a doubt that the gap in the proceedings is a clerical misprision, and why shall we not fill it by giving to the purchaser, or his substitute, the benefit of the contingent interest which he actually bought and paid for? If the præcipe were before us, showing no special direction to issue for the sale of a moiety, there would be no difficulty in the way of giving the venditioni the effect it would have were it formally amended; for in Peddle *v.* Hollingshead, 9 Serg. & Rawle, 277, an omission of the entire command to levy the debt in the body of a levari facias, which was jargon and unintelligible nonsense, was treated as a clerical mistake, and amendable by the præcipe after error brought, a case that is full to the point. But Owens *v.* Simpson, 3 Watts, 87, is still stronger. In that case, the body of the execution, on which the return was endorsed and filed, belonged to another suit, and the sheriff had not the semblance or colour of authority in his hands for his act, yet the whole was amended, or rather reconstructed from the præcipe, levy, inquisition, condemnation, and return of sale, all of which are at hand, as materials for amendment, except the præcipe. But at the end of almost forty years, it is not too much to presume, in support of a title, that it contained a direction for a writ which would have formally authorized the sale which was actually made. It is only by patching up errors in matters of mere form, arising from inexperience consequent on the popular principle of rotation in office, that we can hope to preserve the substance of justice. Whether the principle produces more harm than good, in this respect, it is not for us to say; it is sufficient that it is in active operation, and that it is our duty so to deal with its consequences as to benefit by those that are beneficial, and avert those that are prejudicial. We are of opinion, therefore, that all the interest of John Philip De Haas in the premises, whether vested or contingent, passed by the sheriff's deed and subsequent conveyances to Joseph Rubicam, the defendant's lessor. Judgment reversed.