# Robbins's Estate.

*Assignment for creditors—Contingent interest.*

Where a testator directs that certain real estate shall not be sold during the life of the life tenants to whom he devised it, and not until the full expiration of twenty years from his decease, and that when sold the proceeds should be distributed amongst his nephews and nieces, the nephews and nieces take interests which are more than mere expectancies, and which will pass under an assignment for the benefit of creditors.

Argued April 4, 1901. Appeal, No. 125, Jan. T., 1901, by John T. Robbins, from decree of O. C. Phila. Co., Oct. T., 1881, No. 423, dismissing exceptions to adjudication in the estate of John Robbins, deceased. Before McCollum C. J., Fell, Brown, Mestrezat and Potter, JJ. Affirmed.

Exceptions to adjudication.

From the record it appeared that John Robbins died on April 27, 1880, leaving a will by which he devised certain real estate to his wife for life. He further directed as follows :

"Item 12. From and immediately after the expiration of twenty years from my decease and after the decease of my said wife, and of the said Jacob B. Foulkrod, I order and direct that the said wharves at the foot of Shackamaxon Street shall be sold by my executors, and that the net proceeds of the said sale shall go to and be distributed among my nephews and nieces, the children of my brothers Charles and Stephen and my sisters Rebecca and Emeline, and the lawful issue of such of my said nephews and nieces as shall then be deceased, their heirs, executors, administrators and assigns, in equal parts and shares by heads and not by stocks, so nevertheless that such lawful issue shall take and receive such part and share only as his, her or their deceased parent or parents would have had and taken had he, she or they been then living."

On June 26, 1889, John T. Robbins made an assignment for the benefit of creditors. Testator's widow died on May 5, 1899. Before the auditing judge the assignee for creditors of John T. Robbins claimed to share in the distribution of the proceeds of the sale of the wharf property. Penrose, J., allowed the claim.

On exceptions to the adjudication ASHMAN, J., filed the following opinion:

If the distinction between a contingent interest and a mere expectancy as put by GIBSON, J., in DeHaas v. Bunn, 2 Barr, 335, is adopted, it will greatly simplify the question to be decided. He described an expectancy as "a bare hope of succession to the property of another such as may be entertained by an heir apparent." Such a hope is inchoate, it has no attribute of property, is without appreciable value, and the interest to which it relates is non-existent and may never exist. A contingent interest, on the other hand, is an actual creation whose existence may be cut off by few or many contingencies but whose very existence gives it a possible value. The dividing line is very sharply drawn by the cases. Thus in Humphreys v. Humphreys, 1 Yeates, 427, "the law (Stat. of 4 Anne) was made to answer the purposes of a commercial people and to secure the payment of just debts, and it meant to comprehend all possible titles, contingent or otherwise, in lands where there was a real interest but not such as that of an heir apparent." The distinction was emphasized in Day v. The New England Life Insurance Co., 111 Pa. 507, where a policy of life insurance payable to his legal representative was attached in the lifetime of the insured, and where the attachment was held to be nugatory because the rights in the policy were inchoate because they fell if the assured failed to pay the premium, or surrendered the policy, and because no action could be brought in his lifetime against the insurer. In In re Wetmore, 4 Am. Bankr. Rep. 335, where the interest of the bankrupt devisee was contingent not only upon the living to a certain day but upon the failure of the previous taker to appoint under a general power, his position was said "not to be distinguishable from the position of an heir apparent who will succeed to an estate if he outlive the owner, and if the owner do not make a will in favor of some other person. This, however, is a mere hope of succeeding to the estate."

Whether in the case before us the nephew took a vested interest subject to be divested upon his dying before the life tenants and before the sale, or whether his interest was contingent upon the happening of those events, it was manifestly something more than an expectancy. To limit the question

still further it is not necessary to determine whether the interest could be the subject of an attachment execution. The single inquiry is whether it would pass under an assignment for the benefit of creditors. The heart of such a contract is the denuding of the debtor of every title and interest which he possesses or to which he may justly lay claim, towards the satisfaction of his debts; and it is based upon a valuable consideration because its effect is to facilitate a settlement of those debts. The interest of the nephew in the wharf property, call it vested or contingent, could have been sold by him, and it is conceivable might have been his most valuable asset. By what equitable principle was it excluded from passing under the instrument in which he and his co-partner " desirous of appropriating all their property for the benefit of their creditors " assigned " all their goods, titles, effects and property of very kind, real, personal or mixed " of them individually and as a firm " for the creditors, firm and individual of the assignors." In Higden v. Williamfon, 3 P. Wms. 132, the devise was to such of the children of A as shall be living at his death. B, a son, became bankrupt in A's lifetime. His interest was clearly contingent, but it was held liable to bankruptcy for the reason that the son might at any time have released it. In other words it was a real interest and not what GIBSON, J., felicitously termed a hope. For the reason that no judgment can be given until the happening of the contingency it was held in Patterson v. Caldwell, 124 Pa. 455, that an attachment execution could not grasp expectancies or contingent interests. But it was also said that " equity will uphold an assignment of contingent interest and expectancies and things resting in mere possibilities." So in In re Wetmore, supra, where the interest of the bankrupt was compared to the mere expectancy of the heir the court added : " In equity his assignment might be enforced as an agreement to convey but only if a valid consideration had passed between the parties." In Serrill's Estate (Wickersham's Appeal), 18 W. N. C. 36, the interest of the assignee was contingent upon the death of the life tenant without leaving issue, and the assignment was of " the personal estate of every kind, quality and description " to which he was entitled " by virtue of said will; " the assignment, it was decided, carried with it the contingent interest, although the latter did not vest until twenty-three years after the assign-

ment. In Whelen v. Phillips, 151 Pa. 312, the interest contingent upon the survival of the assignor was held to have passed under the assignment executed in the lifetime of the testator. We cannot distinguish between these cases and the present. To attempt to separate them by assuming that the interest of the assignor in either instance was a real interest, and the interest of the assignor in this case was a mere expectancy like the hope of a succession, is to confound the meaning given to those terms by repeated decisions. The gift was to the nephews, of whom the assignor was one, or to their issue at the end of twenty years and after the death of the two life tenants. This was a real interest carved out by the will, and it has nothing in common with the hope entertained by an heir that he may succeed to his ancestor's estate, or the hope, almost as vague, of the legatee in In re Wetmore, supra, that he might outlive the life tenant and that the donee of the power might fail to appoint.

The exceptions to the adjudication are dismissed.

*Errors assigned* were in dismissing exceptions to adjudication.

*John Houston Merrill*, for appellant, cited : In re Wetmore, 102 Fed. Repr. 290 ; In re Hoadley, 101 Fed. Repr. 233 ; Patterson v. Caldwell, 124 Pa. 455 ; Day v. New England Life Ins. Co., 111 Pa. 510.

*Bernard Gilpin*, for appellees, cited Rash's Est., 2 Parsons, 160.

PER CURIAM, May 27, 1901 :

The exceptions filed by John T. Robbins to the adjudication of the auditing judge were taken into consideration and passed upon by the court in banc. The investigation by the court resulted in a dismissal of the exceptions and an affirmance of the adjudication. In a clear and concise opinion Judge ASHMAN sustained the adjudication which was approved by the judges constituting the court. The cases cited and considered by the court appear to support the conclusion arrived at. We, therefore, affirm the decree and dismiss the appeal.

Decree affirmed.