535 A.2d 151

**Rosemary HUTNIK, Appellee,**

v.

**John S. HUTNIK, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 15, 1987.

Filed Dec. 28, 1987.

Karen A. Feryo, Bethlehem, for appellant.

Richard J. Shiroff, Easton, for appellee.

Before McEWEN, MONTEMURO and KELLY, JJ.

MONTEMURO, Judge:

This is an appeal from an order of equitable distribution.

The parties were married in 1961, and separated twenty years later. A divorce under 23 P.S. § 201(d), requiring a three year separation, was granted in May of 1987, one month after a decree had been entered distributing the marital property 55% to appellee, and 45% to appellant. After rulings on the exceptions of both parties, this appeal followed.

Our first inquiry concerns the appealability of the equitable distribution order. In *Campbell v. Campbell*, 357 Pa.Super. 483, 516 A.2d 363 (1986), an *en banc* panel of this

court held that an order of equitable distribution entered prior to issuance of divorce decree is not final, because such an order, being premature, does not dispose of a divorce action. "This is because the settlement of economic and property claims is merely a part of the trial court's broader power to terminate the marriage. Equitable distribution is an incident of divorce, not marriage." *Id.*, 357 Pa.Superior Ct. at 489, 516 A.2d at 366. However, the *Campbell* court, also held that a pre-divorce decree distributing marital property is rendered final by entry of a divorce decree, and examined the decree in question because its prematurity was inadvertent. *Id.* We find the procedural events in *Campbell* to approximate those herein, and applying the *Campbell* precedent, find this appeal properly before us. *But see Colagioia v. Colagioia*, 362 Pa.Super. 213, 523 A.2d 1158 (1987) (appeal quashed where no divorce decree entered).

In assessing the propriety of a marital property distribution scheme, our standard of review is whether the trial court, by misapplication of the law, or failure to follow proper legal procedure, abused its discretion. *Johnson v. Johnson*, 365 Pa.Super. 409, 529 A.2d 1123 (1987); *Thomson v. Thomson*, 359 Pa.Super. 540, 519 A.2d 483 (1986); *Ganong v. Ganong*, 355 Pa.Super. 483, 513 A.2d 1024 (1986); *Sergi v. Sergi*, 351 Pa.Super. 588, 506 A.2d 928 (1986); *King v. King*, 332 Pa.Super. 526, 481 A.2d 913 (1984). Moreover, "an abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence." *Sergi, supra*, 351 Pa.Super. at 591, 506 A.2d 930, *citing Braderman v. Braderman*, 339 Pa.Super. 185, 190, 488 A.2d 613, 615 (1985). Specifically, we measure the circumstances of the case, and the conclusions drawn by the trial court therefrom, against the provisions of 23 P.S. § 401(d)[1], and the avowed objectives of the Divorce Code,

---

1. Section 401(d) lists as among those factors to be considered in distributing marital property:
   1. The length of the marriage.
   2. The prior marriage of either party.

that is, to "effectuate economic justice between [the] parties ... and insure a fair and just determination of their property rights." 23 P.S. § 102(a)(6).

Appellant and appellee are respectively 51 and 44 years old. Appellant, a college graduate, has, since 1969, been employed in middle management of a manufacturing corporation and receives a weekly gross salary of $623. The company also pays him an annual bonus based on its own profits, as well as insurance and pension benefits. In 1985, appellant received $900 under the bonus arrangement.

Appellee, who possesses a high school education, is employed as a secretary at a net income of $256.42 per week. She also earns $500 annually teaching aerobics.

At the time of the hearing, two of the parties' three children were students and receiving parental support, principally from appellant. One of these children resides with appellant in the marital residence, and one with appellee in a rented apartment. The parties' third child is a self-supporting adult living abroad.

Appellant has presented us with five issues[2] which we will address *seriatim*, albeit in an altered sequence.

> 3. The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.
> 4. The contribution by one party to the education, training, or increased earning power of the other party.
> 5. The opportunity of each party for future acquisitions of capital assets and income.
> 6. The sources of income of both parties, including but not limited to medical, retirement, insurance or other benefits.
> 7. The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.
> 8. The value of the property set apart to each party.
> 9. The standard of living of the parties established during marriage.
> 10. The economic circumstances of each party at the time the division is to become effective.

2. We note with disapproval that appellant has violated that provision of Pa.R.A.P. 2116(a), which limits the statement of questions to one page.

Appellant assigns error to the trial court's method of applying several provisions of § 401(d). Initially, appellant argues that the court reached an unsupported conclusion in finding that his earnings are "substantially" greater than appellee's. Since appellant's own brief contains the information that appellant's gross pay per week is more than twice that of appellee for the same period, simple arithmetic would guarantee the percipience of the court's conclusion.

■ Appellant's other claims with respect to § 401(d) are equally specious, and similarly unpersuasive. Appellant argues that in justifying the unequal division of property, the court erroneously applied such data as the length of the marriage, the appellant's "obviously" higher financial standing, the "likelihood" that the parties relative financial positions would remain unchanged, and the respective worth of the parties' contribution to the marriage [3]. In reviewing appellant's own reading of the factors he considers to be controlling, one point is made clear, that is, his insistence that as primary breadwinner he is entitled to more favorable treatment than he was afforded. As the Code is intended to remedy the injustices resulting from precisely that attitude, and because all pertinent information was fully considered in making the unequal award, we find no merit to appellant's assertion.

This assessment does not alter upon examination of appellant's next claim. By means of a somewhat inartfully drawn issue, appellant claims that the trial court should not have adopted the finding of the Master as to the value of his entire pension since no evidence was presented at the hearing as to the specific value of the marital portion. In addressing this contention the trial court found that because the testimony of appellee's expert had been essentially uncontradicted, the Master's assignment of the value of the pension to the entire duration of the marriage, as

3. We note in this regard that appellant claims to have "custody" of the parties' twenty-one year old son. Support of minor children is not a consideration in equitable distribution proceedings. *Bold v. Bold,* 358 Pa.Super. 7, 516 A.2d 741 (1986). Support of an adult child is even less germane to these proceedings.

opposed to a valuation which ceased at date of separation, was appropriate. *Bold v. Bold,* 358 Pa.Super. 7, 516 A.2d 741 (1986). (Wherein this court found that valuation computed by appellee's expert was acceptable because appellant, having presented the court just with basic figures, failed to point out error in expert's calculations.)

This court has repeatedly stated that in general "[o]nly that portion of the pension attributable to the period commencing with the marriage and ending on the date of separation is marital property within the meaning of the Divorce Code." *Braderman, supra* 339 Pa.Super. at 196, 488 A.2d 618. *King v. King,* 332 Pa.Super. 526, 481 A.2d 913 (1984). Also, see generally *Diamond v. Diamond,* 360 Pa.Super. 101, 519 A.2d 1012 (1987); 23 Pa.S.A. § 401(e).[4] However, an exception to this rule was recently reiterated in *Morschhauser v. Morschhauser,* 357 Pa.Super. 339, 516 A.2d 10 (1986). There we held that "where a plan has vested and value increases aside from contribution of the parties, beyond the date of separation," *id.,* 357 Pa.Superior Ct. at 344–345, 516 A.2d 12–13, the increase is marital property. Here the facts support application of that principle: appellant's plan, although vested was not yet matured. As we noted in *Braderman,* "the vast majority of jurisdictions hold that vested, unmatured retirement benefits are marital property." *Id.* 339 Pa.Super. at 193, 488 A.2d 616. Pennsylvania is included in the majority, and appellant's claim is without merit.

Appellant also complains that the Master should not have relied on the expert's evidence because it was based in part on depositions which are violative of the Pa.R.C.P. 1920.22 prohibition on discovery, other than interrogatories, in divorce cases where claims are made for distribution of property rights or alimony. Interestingly, appellant quotes

4. Section 401(e) reads in pertinent part:
   (e) For purposes of this chapter only, "marital property" means all property acquired by either party during the marriage except:

   (4) Property acquired after separation until the date of the divorce....

the hearing testimony of the expert to the effect that, finding the depositions inadequate and confusing, he based his computations on a letter from the administrator of retirement benefits at appellant's place of employment. Appellant's argument as to the basis for those computations is without merit.

■ It is contended, in addition, that the wrong principle of distribution was applied in regard to the pension. The trial court, citing *Braderman, supra,* found that under the circumstances of this case, the immediate offset method used by the Master was appropriate. We agree.

> The immediate offset method has the advantage of avoiding further entanglement between the parties. Problems with continuing court supervision and enforcement are also avoided. This method's greatest virtue, however, is that it effectuates a final and immediate settlement of the distribution of the retirement benefits.

*Id.,* 339 Pa.Superior Ct. at 198, 488 A.2d 620. The immediate offset method is justified herein not only by its finality, but because there is sufficient property other than the pension to render the more cumbersome deferred distribution method unnecessary.

■ Appellant next argues that the court's reappraisal of the marital residence, and the award to appellee of one half its rental value is error. The basis of the claim is that appellant's payments of mortgage, insurance, taxes, and upkeep on the house are not sufficiently considered. The award to appellee of one half the rental value of the house is consistent with our holding in *Gee v. Gee,* 314 Pa.Super. 31, 460 A.2d 358 (1983), that the party out of possession must in some manner be compensated for his or her "rights and interests in the land." *Id.,* 314 Pa.Superior Ct. at 35 n. 2, 460 A.2d at 360 n. 2. Herein the rental value was reduced by appellee's share of the payments made by appellant for mortgage, etc. during the separation. Appellant's claim, therefore, has no merit.

■ Appellant's penultimate claim is that there was error in the court's award to appellee of one half her attorney's fees, and two thirds of the court costs. Our standard of review in regard to these items has recently been reiterated by this court in *Johnson v. Johnson, supra.*

> In determining the propriety of an award of counsel fees, we also utilize an abuse of discretion standard of review. However, counsel fees are not awarded to either spouse automatically. "Actual need must be shown in order to justify an award." Counsel fees are appropriate when necessary to put the parties "on a par" in defending their rights or in allowing a dependent spouse to maintain or defend an action for divorce.

*Id.* 365 Pa.Super. at 415, 529 A.2d 1126 (citations omitted). The record in this case fully supports a finding of sufficient need on appellee's part to justify the award. Further, as the trial court points out, appellant accepted as reasonable the value placed on the services supplied by appellee's counsel.

Appellant's final claim is that the trial court erred in adopting the finding of the Master which gave weight and consideration to certain certificates of deposit, amounting to some forty-thousand dollars ($40,000) held jointly by appellant with his mother. It is argued that because appellant's potential receipt of this money is highly speculative, the certificates should not have been factored into the Master's assessment of appellant's financial position.

The status of potential expectancies such as the certificates, is a question which the courts of this Commonwealth have not definitively addressed in the context of divorce actions. In *Madden v. Madden,* 336 Pa.Super. 552, 486 A.2d 401 (1984), this court found that savings bonds placed by appellant's mother in joint names with her son constituted an *inter vivos* gift. However, this finding was made in retrospect since appellant's mother had died, and the bonds had been cashed in by the time the matter came before the court. The fact that appellant's mother herein is still living is crucial given the provision of the Multiple Party Accounts

Act, 20 Pa.C.S.A. § 6302 *et seq.*, on the matter of gifts. Section § 6303(a) reads as follows:

Joint account.—A joint account belongs, during the the lifetime of all parties, to the parties in proportion to the net contributions by each to the sum on deposit, unless there is clear and convincing evidence of a different intent.

Appellant's mother testified at the Master's hearing that the money involved represented the proceeds of the sale of her house, that she regarded it as hers alone, and that appellant's name had been placed on the certificate merely for her convenience. Clearly, no gift was intended. The question then becomes whether, as an expectancy, the funds in the certificate should be included at all in calculations of financial position for purposes of equitable distribution.

An expectancy has been defined as " 'a bare hope of succession to the property of another such as may be entertained by an heir apparent.' Such a hope is inchoate, it has no attribute of property, is without appreciable value, and the interest to which it relates is non-existent and may never exist." *Robbins's Estate*, 199 Pa. 500, 501, 49 A. 233, 233 (1901) (citing Gibson, J., in *De Haas v. Bunn*, 2 Pa. 335, 338 (1835)). *See also Johnson v. Breeding*, 136 Tenn. 528, 529, 190 S.W. 545 (1916).

Consistent with this definition, expectancies are incapable of valuation, and therefore speculative in the extreme: they are subject to dissipation by the prospective donor, the intended donee may predecease the donor, or some other event may intervene to prevent the putative recipient from enjoying actual receipt.

On the other hand, the Divorce Code nowhere excludes consideration of expectancies or inheritances for purposes of equitable distribution. When the specifics of § 401(d), particularly § 401(d)(5) concerning "future acquisitions of capital assets and income," are read together with the objectives of the Code expressed in § 102(a)(6), consistency would dictate that achieving economic justice requires the

inclusion of expectancies and inheritances if theoretical future acquisitions from earnings or investment are legitimate considerations. Further, § 401(d) is not exhaustive. *See Baraff v. Baraff*, No. 10, October 1980 (CCP Allegheny County, January 10, 1983). *See also* 1 J.A. Rounick, *Pennsylvania Matrimonial Practice* § 18.11.1.

However, after carefully assessing the weight to be accorded these competing interests, we find that the question of appellant's expectancy from his mother is beyond the trial court's proper scope of inquiry. Even in cases where the donative intent of a parent is unambiguous, courts have found the intended beneficiary's interest to be too insubstantial to be included in a distribution scheme. *Krause v. Krause*, 174 Conn. 361, 387 A.2d 548 (1978), presents a situation in which the mother of the wife in a divorce action testified that she and the wife's father intended to provide for their daughter and grandchild, and that their wills were being altered to accomplish this. The wife had, in fact, already been given $3,000 by her parents. The trial court ruled that the testimony of the mother as to the potential inheritance was inadmissible as too speculative. The Connecticut Supreme Court affirmed, holding that, "The Court's ruling cannot be said to be an abuse of discretion under the circumstances surrounding the vesting of a 'potential inheritance of the wife,' as the defendant describes it, the expectancy according to the testimony, elicited and appearing in the finding and transcript is, at best, speculative." *Id.* at 365, 387 A.2d at 550. We cannot disagree.

As we have already stated, the realization of an expectancy is contingent upon the continuing existence of at least three factors: the res, the beneficiary, and the benevolent intent of the prospective donor toward the divorcing party. These are all readily mutable, so that what is involved is the possible receipt of an uncertain amount at some undeterminable future date. To allow such a protean element to control in any way the disposition between the parties of jointly owned, ascertainable assets would perform a disserv-

ice to both. There may be circumstances, such as irrevocable trusts, under which an expectancy or inheritance falls outside the usually applied definition, but that is not the case herein.

Even where a legislated right exists for attachment of a beneficial interest, such attachment can be made only after the interest is in fact realized. In *Posner v. Sheridan,* 451 Pa. 51, 299 A.2d 309 (1973), our Supreme Court was presented with a decree which allowed appellee to enforce a child support order by garnishing both income and principal of a spendthrift trust of which her former husband, the appellant, was the beneficiary. The court, after noting that the trust income was available for support by statute, vacated the decree on the basis that the trial court had also awarded appellee nine-tenths of the corpus to cover arrearages even though appellant had, by the time of trial, received just one third of the principal; the balance was appellant's only by future right, with contingent remaindermen to take if appellant did not survive the term of trust. The court held that only the amount already held by appellant was subject to immediate attachment, although a lien would serve to secure the rest. *Id.,* 451 Pa. at 62, 299 A.2d at 314.

In the case before us the certificates were found by the trial court to have been accorded proper weight by the Master, who commented upon them as follows:

> In addition the husband is listed as joint owner with his mother of $38,655.75 worth of certificates of deposit. That money is his mother's but would be expected to pass to him upon her death if it had not sooner been expended for the mother's benefit.

Master's Report at 4–5. Ignoring appellant's name on the certificates would have been impossible in reviewing his total assets for the reason that his standing with regard to a legal relationship, the joint tenancy with his mother, required explanation in context. However, the Master, and the trial court, went farther, according to the certificates some impact, the extent of which is unclear, in determining

appellant's financial position and the resultant award. This was error.

■ As already noted, we find the unequal distribution of property to have been appropriate. But, the emphasis must, for the sake of equity, be placed on appellant's obvious advantages in education, employment classification, experience, and earning potential. It is because of these superior personal resources that we find the apportionment of marital assets to have been properly weighted in appellee's favor, not because of appellant's theoretical expectancy.

We therefore remand to the trial court for reconsideration of the equitable distribution award consistent with this Opinion.

Remanded. Jurisdiction is relinquished.