J-S75013-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| ERIK K. BOGDON | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LESLIE G. BOGDON | : | No. 921 WDA 2017 |
| Appellant | | |

Appeal from the Order Entered August 14, 2017
In the Court of Common Pleas of Allegheny County Family Court at No(s):
FD13-005592-016


BEFORE:   SHOGAN, J., OTT, J., and MUSMANNO, J.

MEMORANDUM BY SHOGAN, J.:                    FILED FEBRUARY 05, 2018

Leslie G. Bogdon ("Wife") appeals from the order entered August 14, 2017, affirming in part and denying in part the Master's Report and Recommendation and equitably distributing the marital property of Wife and Appellee, Erik K. Bogdon ("Husband").   We affirm.[1]

_____

[1]  At the time Wife filed her appeal in June of 2017, the divorce decree, filed August 14, 2017, had not yet been entered.  "Nevertheless, the appeal is properly before us.  See Schenk v. Schenk, 880 A.2d 633, (Pa. Super. 2005) (citing Campbell v. Campbell, 516 A.2d 363 (1986) (Stating 'although Orders of property distribution are not appealable until entry of a final divorce Decree, case law holds that an award of equitable distribution is appealable where a divorce Decree is entered while an appeal is pending.'))."  Busse v. Busse, 921 A.2d 1248, 1253 (Pa. Super. 2007).

The trial court summarized the facts of the underlying action as follows:

> The parties were married on September 30, 2000 and separated on March 1, 2011 when Husband left the marital residence. Wife maintained exclusive possession of the marital residence and the parties agreed to a shared custody schedule whereby Wife had 55% and Husband had 45% of the custodial time with their two children. Upon separation, Husband voluntarily provided Wife with monthly support, made the monthly mortgage and home equity loan payments and paid real estate taxes on the marital residence. He continued to make voluntary payments until February 24, 2014, when he filed a Complaint in Divorce. Upon filing for divorce, the parties entered into a Consent Support Order, under which Husband paid child support and spousal support in the amount of $1,700 per month and provided Wife with an additional $1,172 per month for the mortgage, home equity loan and taxes.
>
> Husband is forty-two years old and is employed full-time as an engineer with an annual salary of $99,288. Wife is forty-three years old and is employed part-time as a secretary at a Presbyterian church. She previously earned $30,000 per year as an accounts payable clerk and has "no physical or mental impairments that would impede her working a full-time job." See Report and Recommendation, 3. The total marital estate is worth $199,541.87. Id. at 4.
>
> Master [Peggy Lynn] Ferber ["the Master"] recommended a 50/50 distribution of marital assets. With respect to support and fees and expenses, Master Ferber recommended that the Support Order remain in effect until the parties are finally divorced. Master Ferber recommended that Wife shall receive $600 per month in alimony for one calendar year following the entry of a divorce decree. Husband was awarded an $8,500 credit for the fair rental value of the marital residence. The Recommendation stated that "this alimony award will give Wife one full additional year to find a job commensurate with her earning capacity of $30,000." It was further recommended that Husband shall pay 65% of unreimbursed medical costs and activity fees. Wife's claim for counsel fees was denied and the parties were responsible for their respective legal fees.

Trial Court Opinion, 8/21/17, at 3–4.

Following an equitable distribution hearing on November 8, 2016, at which both parties and Husband's brother testified, the Master filed a report and recommendation on January 10, 2017, detailing the above distribution. Wife filed exceptions on January 30, 2017, and Husband filed cross-exceptions on February 17, 2017. The trial court heard arguments regarding exceptions on May 25, 2017, and entered its order denying exceptions in part and affirming them in part on May 30, 2017.[2] Wife filed a timely notice of appeal. Both Wife and the trial court complied with Pa.R.A.P. 1925.

Wife raises the following issues on appeal:

1. Question: Given the vast disparity in earnings and earning capacities, the contribution of Wife to Husband's earning capacity, Husband's far greater capacity for acquiring future capital assets and income, the disparity in both retirement assets and medical benefits, Wife's contributions as a homemaker, and the economic circumstances of the parties at the time of the divisions of assets to become effect, did the trial court commit an abuse of discretion and/or error of law in upholding the Master's recommendation of a 50/50 division of the marital property?

2. Question: Given the consent support order negotiated by the parties, did the trial court commit an abuse of discretion and/or error of law in upholding the Master's award to Husband of any amount of fair rental value of the marital residence?

_____

[2] The trial court granted Wife's exception directing Husband to pay Wife's attorney $2,000 for counsel fees, costs, and expenses. The trial court also granted Husband's exceptions permitting him to retrieve identified personal property from the marital home and directing Wife to provide Husband with proof of refinancing of the marital residence. All other exceptions were denied. Order, 5/31/17.

3. Question: Given the evidence (or lack thereof) in the record, did the trial court commit an abuse of discretion and/or error of law in upholding the Master's recommendation imputing an earning capacity of $30,000 to Wife?

4. Question: Given the Master's failure to consider and state the relevant factors, did the trial court commit an abuse of discretion and/or error of law in calculating an award of alimony/child support and finding that Husband was only responsible for 65% of the unreimbursed medical expenses?

5. Question: Given the great economic disparity between the parties and the lack of marital property available for distribution, did the trial court commit an abuse of discretion and/or error of law in upholding the Master's award of only one year of alimony at $600.00 per month?

6. Question: Did the trial court commit an abuse of discretion and/or error of law by upholding the Master's recommendation ordering Wife to pay one half of the credit card debt, but not ordering Husband to pay one half of the home equity loan?

Wife's Brief at 5–6.

In reviewing awards of equitable distribution, we are guided by the following:

A trial court has broad discretion when fashioning an award of equitable distribution. Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. This Court will not find an "abuse of discretion" unless the law has been overridden or misapplied or the judgment exercised" was "manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record. In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of effectuating economic justice between the

- 4 -

parties and achieving a just determination of their property rights.

Carney v. Carney, 167 A.3d 127, 131 (Pa. Super. 2017) (quoting Morgante v. Morgante, 119 A.3d 382, 386–387 (Pa. Super. 2015) (internal citations and quotation marks omitted)).

"An abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence." Yuhas v. Yuhas, 79 A.3d 700, 704 (Pa. Super. 2013) (en banc). Moreover, it is within the province of the trial court to weigh the evidence and decide credibility, and this Court will not reverse those determinations as long as they are supported by the evidence. Sternlicht v. Sternlicht, 822 A.2d 732, 742 (Pa. Super. 2003). We are also aware that "a master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties." Childress v. Bogosian, 12 A.3d 448, 455–456 (Pa. Super. 2011).

Wife first assails the court-ordered 50/50 division of the parties' marital assets. Wife's Brief at 21. She contends that the division ignored the significant disparity in the parties' earnings and earning capacities, in addition to "the contribution of Wife to Husband's earning capacity, Husband's far greater capacity for acquiring future capital assets and income, the disparity in both retirement assets and medical benefits, Wife's contributions as a homemaker, and the economic circumstances of the

parties at the time[] the division of assets becomes effective." Id. at 21. Wife maintains that a 50/50 split of the parties' property "will leave Wife in an impoverished condition." Id. at 23. Wife argues that an objective analysis of the factors set forth at 23 Pa.C.S. § 3502 suggests that the trial court's 50/50 division of marital property is an abuse of discretion that leaves Wife "with no liquid assests[] and a minimal amount of alimony for an extremely short amount of time." Id. at 29. Wife does not cite case law in support.

The trial court listed the factors a court must consider in the implementation of an equitable distribution scheme and evaluated the Master's reference to them and all relevant factual information assigned to them. Trial Court Opinion, 8/21/17, at 6–9. The trial court found no abuse of discretion by the Master. Id. at 9. Referencing the relevant Childress case, 12 A.3d 448, the trial court noted that instantly, the parties have fewer financial assets than the Childress parties, "but the analysis is similar." Trial Court Opinion, 8/21/17, at 11. The trial court stated:

> Master Ferber discussed at length the parties' respective educational backgrounds and earning powers. It is therefore clear that Master Ferber assigned the appropriate weight to these factors in coming to her determination. Despite the discrepancy in the earning capacities of the parties, the distribution scheme is equitable in light of the short length of the marriage. Based on the thorough consideration of the equitable distribution factors, this [c]ourt found that there was no abuse of discretion. This [c]ourt further found that given the facts of this case there was no reason to deviate from the recommendation of Master Ferber.

I d.

The trial court explained that Wife will receive $86,393.94 "for a marriage that lasted only ten years," noting that the "overall distribution scheme is not inequitable to Wife when she stands to gain such financial resources for a relatively short marriage." Trial Court Opinion, 8/21/17, at 11 (citing Childress, 12 A.3d at 462). Examining the equitable distribution award as a whole, which we must, Childress, 12 A.3d at 455, and in consideration of the province of the trial court to weigh the evidence and decide credibility, Sternlicht v. Sternlicht, 822 A.2d 732, 742 (Pa. Super. 2003), we do not find that the trial court abused its discretion in analyzing the equitable distribution factors as it did.

In her second issue, Wife assails the basis for the trial court's award of fair rental value of the marital residence to Husband for the sixty-eight months Husband had been out of possession of the home, resulting in a credit to Husband of $8,500. Wife's Brief at 30–31; Trial Court Opinion, 8/21/17, at 3. Pointing out that Husband failed to provide any expert or objective evidence regarding the home's fair rental value, Wife suggests that it is "unreasonable and unjust" to reimburse Husband for rent of the marital residence. Wife's Brief at 34.

We have stated:

[I]t is within the discretion of the trial court to grant rental value as a part of equitable distribution. The award of rental value is within the sound discretion of the trial court. The basis of the award of rental value is that the party out of possession of

> jointly owned property (generally the party that has moved out of the formal marital residence) is entitled to compensation for her/his interest in the property.

Lee v. Lee, 978 A.2d 380, 385 (Pa. Super. 2009) (quoting Trembach v. Trembach, 615 A.2d 33, 37 (Pa. Super. 1992)). In Gee v. Gee, 460 A.2d 358 (Pa. Super. 1983), and Hutnik v. Hutnik, 535 A.2d 151 (Pa. Super. 1987), for example, this Court found that it was within the discretion of the trial court to award one-half of the fair rental value to the dispossessed party. The Trembach Court explained, "Generally, . . . the parties' have an equal one-half interest in the marital property. It follows, therefore, that in cases involving the marital home that the dispossessed party will be entitled to a credit for one-half of the fair rental value of the marital home." Trembach, 615 A.2d at 37.

The Master noted that "Husband left the marital residence on March 1, 2011[, and] Wife has had exclusive possession of the home since that time." Master's Report and Recommendation, 1/10/17, at 2. Husband sought compensation for the fair rental value of the home for sixty-eight months, relating back to the date of separation. Id. at 3; Trial Court Opinion, 8/21/17, at 12. Husband did not offer expert testimony regarding the fair rental value but instead, testified that, by referring to online sites such as "Craigslist and Zillow," the home had a fair rental value of $1,000 per month. Master's Report and Recommendation, 1/10/17, at 3; N.T., 11/8/16, at 38.

The trial court considered and rejected Wife's arguments regarding the appropriateness of awarding Husband fair rental value of the marital residence. It agreed with the Master that "[g]iven the location, equity value and type of home," $1,000 was a reasonable monthly rental value of the house, but it did not grant Husband one-half of the value. Trial Court Opinion, 8/21/17, at 13–14. The trial court stated as follows:

> Husband testified that the marital residence is a three bedroom, one bathroom house located [in] Carnegie, PA 15108. The parties stipulated to the equity value of $59,890.48 for the marital residence. As stated in the Report and Recommendation, Husband did not provide evidence beyond his testimony to support his assertion that the residence had a fair rental value of $1,000 per month. Given the location, equity value and type of home, it is not unreasonable to believe that the marital residence could be rented for $1,000 per month. Master Ferber, however, did not feel comfortable accepting Husband's assertion and accordingly credited Husband $125 per month for 68 months. It is not clear what Master Ferber ultimately determined the total fair rental value to be, but it is clear that she considered the fact that Wife "paid the utilities and homeowner's insurance." See Report and Recommendation, 2. Despite the fact that the Report and Recommendation did not contain a statement of the total fair rental value, it is clear that Master Ferber gave the appropriate consideration to Wife's contributions and ultimately credited Husband with a value that was far below the amount that he requested.
>
> With respect to Wife's assertion that she "actually paid the entire mortgage," it was made clear both in the record and in the Report and Recommendation that Wife received additional funds from Husband to be used for such payments. As indicated throughout the Report and Recommendation, Husband voluntarily paid the mortgage, home equity loan and real estate taxes in addition to spousal and child support from the date of separation until the date that the Support Order was entered. Pursuant to the Support Order, Husband continued to pay "$1,700/mo. . . . Husband continued to pay the mortgage, home equity line of credit, and the real estate taxes . . . Husband's

monthly contribution to Wife and children's support totaled between $2,856 and $2,957 per month." See Report and Recommendation, 2 (emphasis added). To say that Wife "actually paid the entire mortgage, taxes and insurance" is therefore wholly inaccurate as Husband provided Wife with the funds to make the payments.

Given the fact that Husband is the dispossessed spouse and that he continued to make payments associated with the marital residence, this [c]ourt found that an award of the fair rental value was appropriate. This [c]ourt further found that there was no abuse of discretion in determining that Husband was entitled to $125 per month in fair rental value credit. In fact, this is likely on the low end given the facts of this case. This [c]ourt accordingly dismissed Wife's Exceptions with respect to the fair rental value credit.

Trial Court Opinion, 8/21/17, at 13–14. The Master determined, and the trial court concurred, in a fair-rental-credit that was one-eighth of the value identified by Husband and one-fourth of the amount he requested. The trial court explained the propriety of such an award, which we conclude was not an abuse of discretion. Id.

The next three issues concern assignment of an earning capacity to Wife, the award of alimony, and payment of unreimbursed medical expenses, which we will address in tandem. Wife argues that the trial court abused its discretion in upholding the Master's recommendation imputing a $30,000-per-year earning capacity to Wife. Wife's Brief at 34. That figure is the amount Wife previously earned per year in 2002, before the parties' children were born. N.T., 11/8/16, at 130. Wife currently works fifteen hours per week at an hourly rate of $11.25 per hour. Id. at 126. "Wife's current earnings are $660/mo. on her part-time gross salary of $8,853/yr."

Master's Report and Recommendation, 1/10/17, at 6. As of January of 2017, the parties' children were ages twelve and eight. Id. at 2. While Wife worked throughout the parties' marriage, she had not worked full-time since 2002. N.T., 11/8/16, at 130. Wife asserts that because she lacks a college degree and has not worked full-time for a number of years, she experiences "marked decrease in her employability." Wife's Brief at 35. Wife avers that the Master made demeaning comments during the hearing that suggested Wife willfully worked at a lower paying job to minimize her financial obligation. Id. at 37–39. Thus, Wife suggests that assignment of the earning capacity was an abuse of discretion.

Relatedly, Wife argues that the award of alimony of $600 per month for one year represents an abuse of discretion. Wife's Brief at 43. The Master awarded Wife $1,274.70 per month in child support[3] and alimony for one calendar year, not taxable to Wife or deductible by Husband, to enable Wife "to find a job commensurate with her earning capacity of $30,000." Master's Report and Recommendation, 1/10/17, at 6. Wife maintains that the alimony award "is too little to ensure that she can survive at a reasonable level—particularly when compared to the standard of living the Husband enjoys." Wife's Brief at 43. Wife suggests the Master and trial

_____

[3] The Master multiplied the support guideline amount by eighty percent to adjust for the shared custody split of 55/45. Master's Report and Recommendation, 1/10/17, at 6 n.5.

court failed to assess all relevant factors. She focuses upon the disparity between the earnings and earning capacities of the parties, the fringe benefits of the parties' employment and employment opportunities, the ten-year duration of the marriage, the demands of the children, and the disparity of the parties' educational levels. Wife's Brief at 50–60.

Wife also posits that the designation of sixty-five percent of the responsibility for the children's unreimbursed medical expenses to Husband was an abuse of discretion. Noting that Husband earns roughly $98,000 per year, Wife makes this claim based on the disparity of the parties' earnings and, in her case, earning capacity. Wife's Brief at 40. While Wife does not acknowledge that Husband provides the children with health insurance, she maintains that he "should bear a larger share of this burden." Id. at 42.

We examine the applicable standards and legal precepts. In the child-support arena, a body of case law has developed regarding a parent's duty to obtain appropriate employment in order to provide his or her children with financial support. Because child support is a shared responsibility, both parents are obligated to support their children "in accordance with their relative incomes and ability to pay." Reinert v. Reinert, 926 A.2d 539, 542 (Pa. Super. 2007).

> "Ordinarily, a party who willfully fails to obtain appropriate employment will be considered to have an income equal to the [party's] earning capacity." Pa.R.Civ.P. 1910.16-2(d)(4). The determination of a parent's ability to provide child support is based upon the parent's earning capacity rather than the

parent's actual earnings. See *Kelly v. Kelly*, 633 A.2d 218 (1993).

*Laws v. Laws*, 758 A.2d 1226, 1229 (Pa. Super. 2000). A party's age, education, training, health, work experience, earnings history, and childcare responsibilities are factors that shall be considered in determining earning capacity. *Id.* (citing Pa.R.Civ.P. 1910.16–2(d)(4)). We have also stated, however, that in appropriate cases, the "earning capacity of a parent who elects to stay home with a young child need not be considered." *Reinert*, 926 A.2d at 543 (citing *Kelly v. Kelly*, 633 A.2d 218, 219 (Pa. Super. 1993)).

In defending the assignment of the earning capacity to Wife, the trial court explained:

> The Report and Recommendation provided a thorough description of Wife's work history and stated that she "has worked in full-time jobs before and during the early years of marriage but has not worked full time since [her daughter] was born. During the marriage she was an Avon representative, did some part-time babysitting, and worked two days a month for a contractor doing his books." The Report and Recommendation acknowledged that Wife [is] high school educated and attended North Hills High School. With respect to Wife's previous income, Master Ferber noted that "she has worked for several law firms as a receptionist in the first job and moved up to administrative assistant in the last law firm job. Her earnings went from $23,000 to $27-28,000 during those years. She then went on to Fischer Scientific where she earned $30,000/yr. in her last job as an accounts payable clerk." Master Ferber considered the fact that Wife was 43 years old at the time of the hearing and had "no physical or mental impairments that would impede her working a full-time job." Master Ferber also considered Wife's time spent as a "stay at home mother" during the marriage. The Report and Recommendation also discussed the fact that the parties now share custody and the children, who are in third and

seventh grade and participate in extracurricular activities after school.

* * *

Wife's willful lack of full-time employment warrants the assessment of an earning capacity. As Master Ferber explained in the Report and Recommendation, Wife had five years to become employed in a full-time position. Rather than finding work commensurate with her previous employment, Wife chose to become employed in a part-time position where she earns $11.35 per hour. An earning capacity of $30,000 per year comes down to approximately $15.62 per hour for forty hours per week. Given Wife's age and employment history, it is not unreasonable to expect that she will be able to find such a position. As discussed infra, Wife was awarded alimony for a period of one year. This gives her ample time to find suitable full-time employment.

Trial Court Opinion, 8/21/17, at 15–17.

We cannot say the trial court abused its discretion in assigning the earning capacity to Wife. Wife's claim that obtaining full-time employment will necessitate childcare costs that she currently can avoid, while likely true, is not sufficient to establish the court abused its discretion. Wife testified that the parties' daughter is old enough to be left alone. N.T., 11/8/16, at 131. There is a before-and-after-in-school program for the parties' son that costs $20.00 per day. Id. at 132. In addition, Wife testified that she has called upon Husband and neighbors to get the children from the bus; indeed, Husband, who has forty-five percent custody, is solely responsible on his custodial days. Id. at 31, 126. Husband testified that his parents live in the area, his mother is a lunch monitor in the children's school district, and his parents have offered to help with the children. Id. at 32–33. Moreover, the

parties acknowledged that Wife does leave the children at home on occasion. Id. at 32, 162. We conclude the record adequately supports the assignment of a $30,000 earning capacity to Wife.

Regarding the trial court's award of alimony, we note the following:

An award of alimony may be reversed "where there is an apparent abuse of discretion or there is insufficient evidence to support the award." Balicki v. Balicki, 4 A.3d 654, 659 (Pa. Super. 2010), citing Jayne v. Jayne, 443 Pa. Super. 664, 663 A.2d 169 (1995).

We previously have explained that the purpose of alimony is not to reward one party and to punish the other, but rather to ensure that the reasonable needs of the person who is unable to support himself or herself through appropriate employment, are met. Alimony is based upon reasonable needs in accordance with the lifestyle and standard of living established by the parties during the marriage, as well as the payor's ability to pay. Moreover, alimony following a divorce is a secondary remedy and is available only where economic justice and the reasonable needs of the parties cannot be achieved by way of an equitable distribution award and development of an appropriate employable skill.

In determining whether alimony is necessary, and in determining the nature, amount, duration and manner of payment of alimony, the court must consider numerous factors including the parties' earnings and earning capacities, income sources, mental and physical conditions, contributions to the earning power of the other, educations, standard of living during the marriage, the contribution of a spouse as homemaker and the duration of the marriage.

Leicht v. Leicht, 164 A.3d 1246, 1248 (Pa. Super. 2017) (quoting Teodorski v. Teodorski, 857 A.2d 194, 200 (Pa. Super. 2004) (internal citations, quotations and original emphasis omitted)).

Statutory law provides the general rule that "where a divorce decree has been entered, the court may allow alimony, as it deems reasonable, to either party only if it finds that alimony is necessary." 23 Pa.C.S. § 3701. In determining the amount and duration of alimony, the court must consider seventeen factors. Id. The trial court listed the factors to be considered and determined that the record supported the alimony grant in the instant case. Trial Court Opinion, 8/21/17, at 20. In explaining the propriety of the award, the trial court stated as follows:

> Master Ferber found that Husband voluntarily paid support to Wife from the date of separation until the date that he filed a Complaint in Divorce. Pursuant to the Support Order, Husband has paid over $2,800 per month since February of 2014. The Report and Recommendation compared the potential incomes of the parties and mentioned Wife's time spent as a "stay at home mother" while Husband was employed. Throughout her Report and Recommendation, Master Ferber discussed Wife's previous employment and income and stated that "Wife has had 5 years to increase her earnings and to get a full-time job. She has not done so." Master Ferber recommended that Wife continue to receive alimony in the amount of $600 per month for one year. The Report and Recommendation explained that "this alimony award will give Wife one full additional year to find a job commensurate with her earning capacity of $30,000."
>
> In her Exceptions, Wife argued that the facts of the case "demonstrate the need for an award of alimony for significantly longer time than that recommended by the Master." (Wife's Brief in Support of Exceptions). Wife's position is that she is entitled to a greater and longer award of alimony based on Husband's "maximized" earning potential. Wife cited to Teodorski and argued that the reasonableness standard "requires the court to consider the prior standard of living as well as Husband's ability to pay." This Court dismissed Wife's Exceptions and affirmed Master Ferber's Report and Recommendation with respect to alimony.

All of the information contained in the Report is supported by the transcript of the hearing. Husband testified that following the separation, he voluntarily supported Wife and stated that Wife had "access to the debit card." He further stated that "back at that time I would typically pay the mortgage, pay the bills, and she would have full access to the debit card." (Tr. 33). Pursuant to the February 2014 Support Order and at the time of the hearing, Husband was paying Wife $1,700 in spousal support and child support and $1,172 for the mortgage, home equity, and taxes for the marital residence. (Tr. 34). Husband's contribution to Wife exceeded $2,800 in every month between February 2014 and the November 2016 hearing. Husband has been consistently paying spousal support and child support to Wife for over six years following a marriage that lasted for ten.

As the Domestic Relations statute and the case law make clear, alimony is not guaranteed. Wife cited Teodorski in her Brief in Support of Exceptions and argued that the case supports an increased alimony award in her favor based on the "reasonableness standard." The Superior Court in Teodorski held, however, that the trial court did not abuse its discretion when it denied the wife's petition for alimony. The Court stated that "the trial court, considering the length of the marriage (six years) and the number of years that husband had previously paid spousal support (four years and nine months), denied wife's petition for additional alimony. We find no abuse of discretion." Teodorski v. Teodorski, 2004 PA Super 313, ¶ 19, 857 A.2d 194, 201 (2004). Wife's reliance on Teodorski is therefore erroneous as the case supports Master Ferber's determination.

While the Report and Recommendation did not contain an itemized list of the alimony factors, it was peppered with references to them. Given the fact that Husband and Wife were married for ten years and Husband financially supported Wife for almost six years following the date of separation, Master Ferber's alimony award is reasonable. As Master Ferber explained, Wife has had almost six years to increase her income beyond that of the support paid to her by Husband. Requiring Husband to pay a greater amount or to pay any amount for a longer period of time would be inequitable.

Trial Court Opinion, 8/21/17, at 20–22. We concur with the trial court. The

alimony award for a period of one year was not an abuse of discretion.

As to unreimbursed medical expenses, our rules of civil procedure governing support actions delineate allocation of additional expenses in support actions.[4]   Pennsylvania Rule of Civil Procedure 1910.16-6(c) addresses unreimbursed medical expenses and provides that they "shall be allocated between the parties in proportion to their respective net incomes." The trial court emphasized that Father is responsible for providing the children with health insurance and, as noted supra, the Master apportioned the unreimbursed medical expenses in a sixty-five/thirty-five split.   We are reminded of our decision in E.R.L. v. C.K.L., 126 A.3d 1004 (Pa. Super. 2015), wherein we stated that each parent has an absolute duty to support his or her children even when "it causes hardship or requires sacrifice."  Id. at 1006–1007 (citing Christianson v. Ely, 838 A.2d 630, 638 (Pa. 2003) (citation and internal quotations omitted) ("In a child support hearing, the main concern is for the welfare of the child.  Each parent has a duty which is well nigh absolute to support his or her minor children and each may have to make sacrifices in order to meet this burden.")).   In rejecting Wife's claim that this apportionment represents an abuse of discretion, we rely on the trial court's explanation, as follows:

_____

[4]  We note the trial court's reference to the Master's representation in her report that she "is going to compute the child support for the children given the 55/45 shared custody now in effect.  The Report further stated that Husband's guideline support obligation based on income is $1,274.40.  She accordingly recommended this amount.  See Report and Recommendation, 6."  Trial Court Opinion, 8/21/17, at 18 n.4.

The Domestic Relations statute and relevant case law make clear that unreimbursed medical expenses are allocated in proportion to the parties' net monthly income. Husband's monthly net income is $6,107 and Wife's is $2,500 (gross) based on her earning capacity. Wife's earning capacity represents approximately 30% of Husband's. The recommendation that Husband is responsible [for] 65% of the unreimbursed medical expenses is therefore appropriate.

This [c]ourt was not persuaded by Wife's assertion that the "calculations do not account for the cost of medical insurance, as there are no longer any guarantees that it will be provided by an employer." It is clear that Husband provided health insurance coverage for the family and that Wife was accordingly reliant upon it. Wife, however, failed to present citation to legal authority that supports her argument that she should be entitled to a decrease in the percentage of her obligation as a result of having to pay for her own medical insurance. As stated supra, Wife has had a lengthy amount of time to obtain appropriate employment and health insurance coverage as is customary to do when parties divorce. Wife has been awarded an additional year of alimony in which to find such employment.

This [c]ourt found that Master Ferber's recommendation was made with consideration to relevant and appropriate law and to the facts of this case. Because Master Ferber recommended an obligation to pay unreimbursed medical expenses that was allocated in proportion to the income of the parties, this [c]ourt dismissed Wife's Exceptions.

Trial Court Opinion, 8/21/17, at 18–19.

Wife's final issue challenges the Master's recommendation ordering Wife to pay one-half of the credit card debt because it did not order Husband to pay one-half of the home equity loan. Wife's Brief at 63. This issue is waived. We have stated that an issue must be developed and supported by citations to relevant authority. In re M.Z.T.M.W., 163 A.3d 462, 465 (Pa.

Super. 2017); Mother's brief does neither. Even if not waived, however, we would rely upon the trial court's disposition:

> Master Ferber recommended that Husband be reimbursed for his assumption of the marital debt but did not afford Wife the same reimbursement for the home equity loan payments. "The parties stipulated to the marital debts that existed as of the date of separation being $9,754. Husband has been paying down these debts since separation and agreed to continue doing so." See Report and Recommendation, 3. Master Ferber accordingly credited Husband $4,877 for his "assumption of Wife's share of these debts." Id. There was no mention of the home equity loan.
>
> The Report and Recommendation stated that "Husband provided Wife with voluntary support for her and the children and paid the mortgage, home equity loan and real estate taxes on the marital residence" from the date of separation until the date that the Support Order was entered. Pursuant to the Support Order, Husband continued to pay "$1,700/mo. through PACSES and Husband continued to pay the mortgage, home equity line of credit and the real estate taxes" through another account.

Trial Court Opinion, 8/21/17, at 23. Because Husband provided Wife with the funds to make the home equity loan payments, the trial court determined that Wife was not entitled to their reimbursement. We would not find this conclusion to be an abuse of discretion.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date:  2/5/2018