Edmund L. **MIDDLETON** a/k/a
**Edmund Lewis Middleton,**
**Appellant,**

v.

**Lenora H. BROWN MIDDLETON,**
**Appellee.**

Superior Court of Pennsylvania.

Submitted June 27, 2002.

Filed Dec. 2, 2002.

Brian S. Quinn, Havertown, for appellant.

Peter A. DeLiberty, Broomall, for appellee.

Before: DEL SOLE, P.J., FORD ELLIOTT, JOYCE, STEVENS, MUSMANNO, ORIE MELVIN, LALLY-GREEN, KLEIN, and BENDER, JJ.

KLEIN, J.:

¶ 1 Edmund L. Middleton appeals from the equitable distribution order entered on April 6, 2000 in the Court of Common Pleas of Delaware County. The trial judge, Judge Maureen F. Fitzpatrick, initially issued an order directing Husband to file a statement of matters complained of on appeal pursuant to Pa.R.A.P.1925(b). However, since the parties were exploring settlement, the judge granted an unlimited extension of time within which to file the 1925(b) statement. Then, to avoid having the case open at the end of the year, the judge filed an opinion without waiting for

Husband to file the 1925(b) statement. Counsel agree that Judge Fitzpatrick told them that she had been very involved in the case and was sufficiently familiar with Husband/Appellant's arguments that she could address the issues without a 1925(b) statement. Not being aware of all the circumstances surrounding the 1925(b) statement, a panel of this court ruled all the issues waived for failure to file the statement. Because we now know that the trial court had granted an unlimited continuance to file the 1925(b) statement, we conclude that there was no waiver of Husband's issues on appeal.

¶ 2 We find that Judge Fitzpatrick committed no error in her equitable distribution award. The matter was complicated because for ten years, Husband voluntarily paid more than the child and spousal support orders issued by the court. He paid first and second mortgages on the marital house as well as support. More than fifteen years after separation, Judge Fitzpatrick had to consider what should be a credit for rental value of the house and what should be considered support. Likewise, since Husband was paying more than his obligations, the judge considered it appropriate to give Wife some time to adjust to a lower standard of living. Her final order, after a modification, evenly divided the proceeds of the house rather than giving Wife a higher percentage to adjust for any credit for rental value. She also ordered short-term (six-month) alimony of less than what Husband had voluntarily paid for many years to assist Wife during the time she was trying to sell the house and readjust to more modest circumstances. We find no error in Judge Fitzpatrick's order and instead believe she found a reasonable and practical solution to an unusual situation. We affirm. A full discussion follows.

¶ 3 Edmund L. Middleton and Lenora H. Brown Middleton were married in 1966. Although they separated in March 1985, they were not divorced until December 1993 following Husband's Petition for Bifurcation. There was no real action to move toward a hearing to resolve the outstanding economic issues until February 1998. While an initial equitable distribution order was entered on November 29, 1999, Judge Fitzpatrick granted reconsideration and vacated that order on December 28, 1999, within thirty days of the initial order. *See* Pa.R.A.P. 1701(b). A hearing was held on January 24, 2000, although no further testimony was taken. Thereafter, on April 6, 2000, Judge Fitzpatrick entered the order now before us.

¶ 4 When the parties separated in 1985, Husband moved to California. Wife and the parties' son, now 25 years old, remained in the marital home in Broomall, Delaware County, Pennsylvania. Husband was employed as a referee for the National Basketball Association. While now on disability, he has a significant pension. During the approximately thirteen years from separation until 1998, Husband paid the first and second mortgages on the Broomall house, as well as water, electric and lawn care expenses, and in general, according to the Judge Fitzpatrick, "generously provided for his wife and son at times in excess of any child and spousal obligations."

¶ 5 In her November 1999 order, Judge Fitzpatrick awarded Wife 60% of the marital estate and granted Husband certain credits for the mortgage payments he made, ordered Wife to deliver Husband title to the marital residence, and denied Wife's request for alimony. Wife filed a notice of appeal as well as a request for reconsideration in the trial court. Judge Fitzpatrick granted reconsideration, vacat-

ed the November 1999 order, and entered the April 2000 order.

¶ 6 The April 2000 order awarded each party 50% of the marital estate and denied Husband the previously awarded credits. Judge Fitzpatrick ordered that the house be sold and the mortgages paid off. She did not credit Husband with one-half of the rental value of the home but instead gave Wife 50% of the value of the home rather than the 60% contemplated in the initial order. In addition, Judge Fitzpatrick ordered Husband pay Wife temporary alimony in the amount of $2,000 per month for a period of six months, which amounted to $1,000 a month less than husband had been voluntarily paying.

¶ 7 Husband appealed this order. On May 19, 2000, Judge Fitzpatrick ordered Husband to file a statement of matters complained of on appeal pursuant to Pa. R.A.P.1925(b) within fourteen days. Judge Fitzpatrick wrote in a letter, and the parties agree, that Judge Fitzpatrick granted Husband's counsel an indefinite extension to file his 1925(b) statement because the parties were exploring settlement. Near the end of 2000, Judge Fitzpatrick wanted to file an opinion to comply with Pa.R.J.A. 703, which poses the possibility of a judge being reported to the Judicial Conduct Board if one or more matters have remained undecided for over a year. Without advising Husband to file the 1925(b) statement, Judge Fitzpatrick filed her Pa.R.A.P.1925(a) opinion. She noted to counsel and counsel agree that she stated: "This Court's extensive involvement in this proceeding made it aware of appellant's complaints."

¶ 8 As noted, because it was unaware of the circumstances surrounding the 1925(b) statement, a panel of this Court deemed all issues waived under *Commonwealth v. Lord*, 553 Pa. 415, 719 A.2d 306 (1999). We granted *en banc* review pursuant to

Husband's petition for reargument in which he maintained that the trial court had issued an unlimited extension to comply with its order to file a 1925(b) statement.

¶ 9 We note that the trial court has the option as to whether to request a 1925(b) statement of matters complained of on appeal. It is the 1925(a) *opinion* that enhances this Court's appellate review process. *See Commonwealth v. Lord*, 553 Pa. 415, 719 A.2d 306, 308 (1998) ("The absence of a trial court opinion poses a substantial impediment to meaningful and effective appellate review."). If the trial court understands the issues and has provided this Court with an explanation for its order in the 1925(a) opinion without asking for a 1925(b) statement, we are able to conduct meaningful appellate review. If the trial court initially asks for a 1925(b) statement by a certain date, but accepts the 1925(b) statement late and then considers all the issues raised and discusses them in the 1925(a) opinion, we are able to consider these issues on appeal. *Commonwealth v. Ortiz*, 745 A.2d 662 (Pa.Super.2000), *appeal denied*, 568 Pa. 658, 795 A.2d 973 (2000) (where although appellant's 1925(b) statement was untimely, the trial court's subsequent opinion discussed the issue raised and therefore there was no impediment to meaningful appellate review). Likewise, when the trial judge grants an unlimited extension to file a 1925(b) statement and then decides that he or she knows the case well enough to write a 1925(a) opinion without telling the party that a 1925(b) statement must be filed by a date certain, there is no reason that we should not consider these issues on appeal. Failure to conduct review under these circumstances would undermine the integrity of this Court and confidence in the appellate review process.

¶ 10 Of course, if the trial judge believes he or she is unable to frame the issues, he or she need not guess but may decline to address any issues, and then we do not have a basis for appellate review. *See, e.g., In re C.R.J.*, 801 A.2d 1261 (Pa.Super.2002) (where appellant failed to file a timely 1925(b) statement and the trial court refused to overlook the untimeliness, this court found appellant's issues waived on appeal); *Commonwealth v. Dowling*, 778 A.2d 683 (Pa.Super.2001) (where appellant's 1925(b) statement was not specific enough for the trial court to identify and address the issue appellant wished to raise on appeal, and the trial court therefore did not address it, the claim was waived on appeal); *Commonwealth v. Overby*, 744 A.2d 797 (Pa.Super.2000) (where the trial court ordered a 1925(b) statement and none was filed and trial court determined it was without a basis to render an opinion, this court found no issues preserved for appellate review). *See also Commonwealth v. Alsop*, 799 A.2d 129 (Pa.Super.2002) (*en banc*) (declining to find all issues waived under *Lord* where a concise statement was sent to trial court and inexplicably filed late, and where it was clear from the record that the trial court reviewed the Concise Statement before issuing its 1925(a) opinion, but holding that where the trial court's discussion in its 1925(a) opinion is the result of anticipation, prediction, or guesswork, those issues are not saved for appellate review); *Commonwealth v. Lemon*, 804 A.2d 34 (Pa.Super.2002) (when the trial court has to guess what issues a defendant is appealing, that is not enough for meaningful review); *Giles v. Douglass*, 747 A.2d 1236 (Pa.Super.2000) (where appellant failed to file a 1925(b) statement, and the trial court attempted to guess what issues appellant would raise, meaningful review was hampered and the issues were deemed waived on appeal).

¶ 11 In *Lord, supra* at 309, the Pennsylvania Supreme Court held: "[I]n order to preserve their claims for appellate review, Appellants must comply whenever the trial court orders them to file a Statement of Matters Complained of on Appeal pursuant to Rule 1925. Any issues not raised in a 1925(b) statement will be deemed waived." As noted, there is no requirement that a 1925(b) statement must be filed in every case. It is when a trial judge orders a statement to be filed that the appellant must comply or risk waiver. The trial judge has the discretion to deem all issues waived and decline to address them if no 1925(b) statement is timely filed, *see C.R.J., supra*, as well as the discretion to accept a late filing, *Ortiz, supra*, or grant an extension, as in this case, in light of ongoing settlement negotiations.

¶ 12 It well may be that, as in this case, the trial court is aware of the issues that appellant wishes to raise and does not require anything further to draft an opinion under Rule 1925(a). Particularly here, where Husband's counsel was granted an indefinite extension and not told the extension was being terminated, there is no waiver of appellate issues. It is noted that in this case counsel for the appellee graciously concedes that no prejudice was suffered by Husband's failure to file a 1925(b) statement and urges this Court to address the merits of the case.

¶ 13 We therefore reach the merits of Husband's claims of error:

(1) whether the trial court erred in reversing its original order in the absence of additional evidence or showing of legal error;

(2) whether the court abused its discretion in refusing to credit Husband for payments made in the absence of evi-

dence that those payments were voluntary contributions or gifts;

(3) whether Husband should be credited for one-half the rental value of the marital residence, when Wife had exclusive possession, use, occupancy and control of the property for fifteen years and Husband paid all mortgage, property tax, insurance and utility expenses on the property for that period; and

(4) whether the court erred in granting alimony to Wife in addition to 50% of the marital estate in the absence of any evidence of need or a specific request for alimony by Wife?

¶ 14 This case turns on the parties' 1993 stipulation, executed following Husband's petition for bifurcation, in which Husband agreed to pay the first and second mortgages on the marital home, other household expenses and spousal and child support. The agreed amount was approximately $3,000 per month. Prior to the stipulation, the court had entered a child support order in the amount of $250.00 per week and a spousal support order in the amount of $50.00 per week; those orders were never amended or modified. While the sum of $3,000 per month may have been more than the amount of support ordered, Wife and the parties' son adjusted to a lifestyle based on the agreement. Therefore, special circumstances were presented to Judge Fitzpatrick when the voluntary payments stopped and the economic issues were presented to her for resolution.

¶ 15 On reconsideration and in her 1925(a) opinion, Judge Fitzpatrick noted the difficulties in arriving at an equitable distribution when the parties have gone more than a decade without moving these issues to resolution. She made adjustments to her prior order, requiring the parties sell the marital house and pay off the mortgages, reversing the credit to hus-band for the voluntary payments he made which practically included both mortgages and other payments for the house and child support. More than fifteen years after the separation, it is difficult to calculate what should be considered support and what should be considered a credit for one-half of the rental value of house. To offset this, Judge Fitzpatrick did not give Wife an extra percentage of what will be the proceeds of the sale of the house, but divided the proceeds 50–50. Because of the abrupt decline in the support that had been given to the wife, Judge Fitzpatrick ordered short-term alimony for a six-month transition period while the house is on the market for sale. The court noted that the award was necessary to assist Wife during the marketing of the marital residence and to allow her to move forward.

¶ 16 Not only is this not an abuse of discretion, but it seems to be a very intelligent, practical way to deal with a situation after the parties went so long without moving to resolve their economic issues.

## 1. *Reconsideration*

■ ¶ 17 Husband argues that the trial court erred in reconsidering its order without additional evidence or testimony. This claim is meritless. There is no requirement, and Husband points to none, that mandates additional evidence before the trial court undertakes reconsideration of its order. *See* Pa.R.A.P. 1701(b)(3); *see also* Pa.R.C.P.1930.2(e) ("If the trial court grants the motion for reconsideration, and files same, within the 30–day appeal period, it *may*, at any time within the applicable 120–day period thereafter, issue an order directing that additional testimony be taken.") (emphasis added). Husband points to no reason why there would have been a need to take additional testimony

or where there was prejudice from failing to take additional testimony.

### 2. *Credit for Payments Made Pursuant to the Parties' Stipulation*

■ ¶ 18 The trial court has broad discretion in fashioning equitable distribution awards and we will overturn an award only for an abuse of that discretion. *Oaks v. Cooper*, 536 Pa. 134, 638 A.2d 208 (1994); *Hovis v. Hovis*, 518 Pa. 137, 541 A.2d 1378 (1988); *Gaydos v. Gaydos*, 693 A.2d 1368 (Pa.Super.1997)(en banc). The Divorce Code[1] states that the trial court

> shall ... equitably divide, distribute or assign, in kind or otherwise, the marital property between the parties without regard to marital misconduct in such proportions and in such manner as the court deems just after considering all relevant factors....

23 Pa.C.S. § 3502(a). In assessing the propriety of an equitable distribution scheme, our standard of review is whether the trial court, by misapplication of the law or failure to follow proper legal procedure, abused its discretion. *Johnson v. Johnson*, 365 Pa.Super. 409, 529 A.2d 1123 (1987). "Specifically, we measure the circumstances of the case, and the conclusions drawn by the trial court therefrom, against the provisions of 23 P.S. § 402(d) [now 23 Pa.C.S. § 3502(a) ] and the avowed objectives of the Divorce Code, that is, 'to effectuate economic justice between the parties ... and insure a fair and just determination of their property rights.' 23 P.S. § 102(a)(6) [now 23 Pa.

C.S. § 3102(a)(6) ]." *Hutnik v. Hutnik*, 369 Pa.Super. 263, 535 A.2d 151, 152 (1987). With these principles in mind, we review the trial court's distribution order.

■ ¶ 19 The parties' November 1, 1993 stipulation provides in part:

> Plaintiff [Husband] shall continue to pay to or on behalf of defendant [Wife] all expenses which he is now paying such as first and second mortgages, electric, water, lawn care, child support and alimony (or a sum equivalent thereto) and miscellaneous items, all of which shall approximate a total of $3000.00 per month, until such time as the ancillary issues are resolved.

Stipulation, 11/1/93, R.R. 138a–139a. Husband maintains these payments were "on account" and therefore should be credited against Wife's distributive share. Wife argues that Husband agreed to make those generous payments to support Wife and child until the court resolved the economic issues and there is nothing in the stipulation to indicate that Husband would be credited upon resolution of the economic claims. We agree with Wife. Voluntary payment from Husband's own resources will not be credited at equitable distribution. *See Jayne v. Jayne*, 443 Pa.Super. 664, 663 A.2d 169 (1995). In fact, and as the trial court apparently realized upon reconsideration, if Husband were credited with fifteen years of these payments, $78,224.00, and also credited with one-half of the rental value of the marital residence, $104,105.00, *see infra*, this would wipe out all of Wife's share of the marital estate.[2]

---

1. The Divorce Code of April 2, 1980, P.L. 63, No. 26, as amended 1988, February 12, P.L. 66, No. 13 was repealed by Act of December 19, 1990, P.L. 1240, No. 206, § 2, and substantially reenacted as Part IV of the Domestic Relations Code. *See* 23 Pa.C.S. §§ 3101 – 3707.

2. The court valued the total marital assets at $395,748.00, the marital liabilities at $35,098.56. The court divided the net assets, $363,649.44, evenly ($181,824.72 to each party). The combined credits in the original order totaled $182,329.00 ($104,105.00 representing one-half of the rental value for fourteen years, and $78,224.00 representing expenses advanced to Wife prior to the hearing).

¶ 20 We point out that the stipulation also provided for bifurcation. Parties are free to enter into agreements that they may later regret. Absent fraud or duress, however, the agreement is enforceable. *See Adams v. Adams*, 414 Pa.Super. 634, 607 A.2d 1116 (1992). .

### 3. *Credit for Rental Value of Marital Residence*

■ ¶ 21 Husband claims the trial court abused its discretion in refusing to award him one-half the rental value of the marital residence from the time of separation, March 1985, to the hearing on equitable distribution in June 1999. As noted, in her first order Judge Fitzpatrick had awarded Husband one-half of the rental value of the marital residence for fourteen years ($104,105.00).

■ ¶ 22 An equitable distribution order may include an award to the non-possessing spouse of one-half of the rental value of the marital residence when possessed exclusively by the other spouse during the parties' separation. *Gordon v. Gordon*, 436 Pa.Super. 126, 647 A.2d 530 (1994), *reversed on other grounds*, 545 Pa. 391, 681 A.2d 732 (1996); *Powell v. Powell*, 395 Pa.Super. 345, 577 A.2d 576 (1990); *Gruver v. Gruver*, 372 Pa.Super. 194, 539 A.2d 395 (1988); *Hutnik v. Hutnik*, 369 Pa.Super. 263, 535 A.2d 151 (1987). This award, however, is not mandatory. *See* 23 Pa. C.S.A. § 3502(a)(7); *see also Schneeman v. Schneeman*, 420 Pa.Super. 65, 615 A.2d 1369 (1992) (while each party is entitled to his or her equitable share of marital property, including fair rental value of the marital residence, the trial court need not compute that equitable share as a credit to the non-possessory spouse, as long as the total distributory scheme is equitable); *Butler v. Butler*, 423 Pa.Super. 530, 621 A.2d 659, 668 (1993); *Sutliff v. Sutliff*, 361 Pa.Super. 504, 522 A.2d 1144, 1154 (1987) (although

award of rent is permissible, refusal was not an abuse of discretion).

¶ 23 We do not dispute that Husband in all likelihood exceeded the amount the Court would require him to pay when he paid the mortgages and expenses of the marital home. The point is, he very generously and voluntarily agreed to do so. To reimburse him now, at Wife's expense, in light of the circumstances and equities of this case, would clearly not effectuate economic justice between the parties. The trial court's efforts to reach an equitable division of marital assets and its ultimate order reflects a considered weighing of the economic standings and needs of the parties. The court considered the relevant factors of the Divorce Code, 23 Pa.C.S.A. §§ 3502(a)(1)-(11), and that decision is supported in the record. We find no abuse of discretion. *See Oaks, supra; Hovis, supra; Gaydos v. Gaydos, supra.*

### 4. *Alimony*

■■ ¶ 24 In his final claim, Husband argues that Judge Fitzpatrick abused her discretion in granting Wife temporary alimony in the amount of $ 2,000.00 per month for six months. An award of alimony will not be reversed absent an abuse of discretion. *Perlberger v. Perlberger*, 426 Pa.Super. 245, 626 A.2d 1186 (1993); *Ruth v. Ruth*, 316 Pa.Super. 282, 462 A.2d 1351 (1983). In determining whether alimony is necessary, as well as the amount and duration of the payments, the trial court is required to consider various factors set forth in the Divorce Code, 23 Pa.C.S.A. § 3701(b), including, *inter alia*, relative earnings, sources of income, and the relative needs of the parties. Judge Fitzpatrick stated that the award was necessary to provide for Wife during the time the marital home was on the market. The award is reasonable under the circumstances of this case and supported by the record. *See Adelstein v. Adelstein*, 381 Pa.Super. 221, 553 A.2d 436 (1989). We

find no abuse of discretion. *Barrett v. Barrett,* 418 Pa.Super. 334, 614 A.2d 299 (1992).

¶ 25 Order affirmed.

¶ 26 DEL SOLE, P.J., MUSMANNO, LALLY–GREEN, and BENDER, JJ., join.

¶ 27 DEL SOLE, P.J., files a concurring statement in which KLEIN, J., joins.

¶ 28 JOYCE, J., files a concurring statement in which FORD ELLIOTT, STEVENS, and ORIE MELVIN, JJ., join.

Concurring DEL SOLE, P.J.:

¶ 1 I join the Majority. I write separately to invite the Appellate Court Rules Committee to consider modifying Pa. R.A.P.1925.

¶ 2 In *Commonwealth v. Lord,* 553 Pa. 415, 719 A.2d 306 (1998), the Supreme Court, recognizing that appellate review is substantially impeded by the absence of a trial court opinion, held that the appellant's failure to include issues in an ordered 1925(b) statement resulted in waiver. As the court pointed out:

> Rule 1925 is intended to aid trial judges in identifying and focusing upon those issues which the parties plan to raise on appeal.

*Lord,* 719 A.2d at 308.

¶ 3 I suggest the rule be modified to account for those situations where the trial court's reasons appear of record, or where the trial court knows what issues will be raised on appeal and prepares an opinion addressing those issues. For instance, in cases where post-trial or post-sentencing motions have been filed, or a single issue is raised in a dispositive motion, the trial court can set forth the reasons for its ruling.

¶ 4 Given that in many cases, trial judges do not require 1925(b) statements, and waiver is probably the least favored method of resolving issues, the interests of justice may be better served by revisiting this rule.

¶ 5 KLEIN, J., joins.

Concurring JOYCE, J.:

¶ 1 I agree with the Majority's ultimate resolution of the equitable distribution issues and the absence of waiver under the unique circumstances of the case at bar. However, I am compelled to write separately to express my concerns over the Majority's discussion of waiver and Pa. R.A.P.1925(b) statements.

¶ 2 Put simply, the instant case presents a situation where the trial court extended the period of time in which a Pa.R.A.P. 1925(b) statement could be filed, and as a result, it is proper in this instance for our Court to decline to find waiver. The Majority's lengthy discussion and examples of situations where waiver may or may not exist pursuant to Pa.R.A.P.1925(b) is unnecessary and could cause confusion among the bench and bar.

¶ 3 The procedural history of the case at bar as it relates to Pa.R.A.P.1925 is unique, but it does not however, create a new rule. The law of this Commonwealth remains as it was succinctly set forth by our Supreme Court in *Commonwealth v. Lord,* 553 Pa. 415, 719 A.2d 306 (1998). *Lord* made it clear that failing to timely file a concise statement of matters complained of on appeal pursuant to 1925(b), when ordered to do so by the trial court, renders issues not raised therein waived on appeal. Since the Majority Opinion could be interpreted to stand in contrast to *Lord,* I concur in the result only.

¶ 4 FORD ELLIOTT, STEVENS and ORIE MELVIN, JJ., join.