**Artist and William BRYANT, Appellees,**

v.

**GLAZIER SUPERMARKETS, INC. a/k/a Shoprite Supermarkets, Inc., Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 19, 2002.
Filed April 1, 2003.
Revised April 4, 2003.
Reargument Denied June 5, 2003.

Thomas J. Bradley, Philadelphia, for appellant.

Lawren J. Nelson, Philadelphia, for appellee.

BEFORE: DEL SOLE, P.J., KLEIN and CAVANAUGH, JJ.

OPINION BY DEL SOLE, P.J.:

¶ 1 This is an appeal from a judgment entered for $100,000 plus delay damages following a jury verdict in favor of Appellees and against Appellant-supermarket. Appellees, husband and wife, brought an action seeking to recovery for injury sustained after Appellee-wife was struck on her foot by canned goods which were part of a display but fell. There was testimony offered at trial that Appellee-wife suffered a chronic diabetic foot abscess as a result of the incident which, despite daily intravenous treatments, developed into gangrene and resulted in the amputation of two toes.

¶ 2 Appellant raises five issues and two sub-issues on appeal. The trial court in its opinion writes that "the appeal should be dismissed pursuant to Appellate Rules of Procedure § 1925(b)." According to the trial court it ordered Appellant to file a Statement of Matters Complained of on Appeal within fourteen days of the court's order, yet it was not timely filed. The trial court wrote: "The failure to file a *timely* 1925(b) statement renders all appellate issues moot. No issue is preserved for appellate review in such a circumstance. *Commonwealth v. Overby,* 744 A.2d 797 (Pa.Super.2000)." Trial Court Opinion, 7/2/01, at 1. The court then went on and discussed four issues as an "alternative" and found that the assertions were meritless.

¶ 3 A review of the record includes a notation on the docket that the trial court ordered Appellant to file a statement in compliance with Rule 1925. The order itself, dated December 19, 2001, is included in the record and advises Appellant that it shall have 14 days after the entry of the order to comply and that a failure to comply will be considered a waiver. Absent from the record is Appellant's statement. The docketing statement does not indicate that a Statement of Matters Complained of on Appeal was ever filed. Included in the reproduced record is a copy of such a statement, but it contains no time stamp and no indication that it was ever filed of record. R.R. 1371a–1377a. As evidence of its late filing Appellees have included as part of their brief a copy of the cover letter from Appellant's counsel advising that enclosed could be found a copy of the Statement of Matters Complained of on Appeal. The letter is dated January 2, 2002. The letter also includes a notation that via "HAND DELIVERY" a copy was delivered to the trial judge. Appellees' Brief at 19.

¶ 4 Handing a copy of a motion to a judge in the courtroom or elsewhere, does not constitute a filing. *Wiegand v. Wiegand,* 363 Pa.Super. 169, 525 A.2d 772 (1987); · *Commonwealth v. Nixon,* 311 Pa.Super. 450, 457 A.2d 972 (1983.) Accordingly, Appellant's Statement of Matters Complained of on Appeal was never "filed" and, therefore, never became part of the record on appeal. See Pa.R.A.P. 1921. Since the statement is not of record, we are unable to determine if the issues raised by Appellant on appeal were included as grounds in his Statement, nor are we able to make any conclusion regarding the trial court's finding of waiver based upon a late receipt of the Statement. *See and compare: Commonwealth v. Alsop,* 799 A.2d 129 (Pa.Super.2002) and *Commonwealth v. Butler,* 571 Pa. 441, 812 A.2d 631 (2002).

¶ 5 In reference to the failure to file a Statement of record this Court has held:

[W]e conclude that Appellant's issues are waived for failing to file a Concise Statement and for failing to ensure that the Concise Statement was made part of the certified record. "[I]t is the obligation of the appellant to make sure that the record forwarded to an appellate court contains those documents necessary to allow a complete and judicious assessment of the issues raised on appeal." *Hrinkevich v. Hrinkevich,* 450 Pa.Super. 405, 676 A.2d 237, 240 (1996) (citation omitted). "Under our Rules of Appellate Procedure, those documents which are not part of the 'official record' forwarded to this Court are considered to be non-existent." *D'Ardenne v. Strawbridge & Clothier, Inc.,* 712 A.2d 318, 326 (Pa.Super.1998) (citation omitted), *appeal denied,* 557 Pa. 647, 734 A.2d 394 (1998). "These deficiencies may not be remedied by inclusion in a brief in the form of a reproduced record." *Id.* Similarly, these deficiencies

cannot be cured by indicating that the relevant document was simply mailed to the office of the trial judge but not filed of record.

*Everett Cash Mutual Insurance Company v. T.H.E. Insurance Company,* 804 A.2d 31, 34 (Pa.Super.2002).

¶ 6 Because Appellant never filed a Statement of Matters Complained of on Appeal, as evidenced by the docket and a· review of the record, Appellant's issues are waived.

¶ 7 Judgment affirmed.

¶ 8 KLEIN, J. files a dissenting opinion.

DISSENTING OPINION BY KLEIN, J.:

¶ 1 I respectfully dissent. The majority has found all issues waived for failure to file a timely Pa.R.A.P. Rule 1925(b) statement. While the 1925(b) statement was admittedly filed five days late—it was due on December 28, 2001 but was not filed until January 2, 2002—the delay in no way compromised the trial court's ability to address the issues. This is especially apparent in light of the fact that the trial court did, in fact, analyze the issues in its opinion and the fact that the trial court did not issue its opinion until July 2, 2002. Thus, the trial court waited a full six months from the time it received the 1925(b) statement to issue its opinion.

¶ 2 In light of this 180–day gap between the trial court's receipt of the statement and release of the opinion, I can see no real justification for declaring a five-day delay (two, actually—two of the five days were a weekend and one was a holiday) an insurmountable obstruction to considering the issues on appeal. The trial court ultimately addressed the issues, despite receiving the 1925(b) statement · past the

deadline, so there is no reason those issues should not be addressed here.

¶ 3 The imposition of the waiver rule to an untimely 1925(b) statement remains discretionary: [1]

> **(b) Direction to file statement of matters complained of.** The lower court forthwith may enter an order directing the appellant to file of record in the lower court and serve on the trial judge a concise statement of matters complained of on the appeal no later than 14 days after entry of such an order. A failure to comply with such direction *may be* considered by the appellate court as a waiver of all objections to the order, ruling or other matter complained of.

Pa.R.A.P. 1925(b) (italics added). The purpose of Rule 1925 is to give the trial court the wherewithal to analyze and comment upon the specific issues raised on appeal. Here, the trial court did so in its opinion. Moreover, it is the 1925(a) *opinion* that enhances this Court's appellate review process, *Middleton v. Middleton,* 812 A.2d 1241, 1244 (Pa.Super.2002) (*en banc*), not the 1925(b) *statement.* The trial court addressed four of the five issues raised by Appellant in its 1925(b) statement. As the trial court apparently had no problem addressing the issues, I see no reason for this court to find those issues waived. *See Jahanshahi v. Centura Dev. Co.,* 816 A.2d 1179 (Pa.Super.2003) (issue addressed although not contained in 1925(b) statement); *Middleton v. Middleton, supra,* (where court extended deadline to file statement and miscommunication between court and parties resulted in failure to file 1925(b) statement, issues still addressed on appeal on strength of 1925(a)

opinion); *Commonwealth v. Ortiz,* 745 A.2d 662 (Pa.Super.2000), (where although appellant's 1925(b) statement was untimely, trial court's subsequent opinion discussed issue raised and therefore there was no impediment to meaningful appellate review) *app. denied,* 568 Pa. 658, 795 A.2d 973 (2000); *see also Middleton v. Middleton, supra,* for a comprehensive review of Rule 1925 rulings.

¶ 4 Finally, I note that although the order requiring the filing of a 1925(b) statement was signed December 14, 2002, the record reflects the order was not entered and notice of the order was not given until December 19, 2002. The order specifically states that Glazier Supermarkets had fourteen days from the entry of the order to comply. Fourteen days from December 19, 2002 is January 2, 2003—the date the 1925(b) statement was allegedly filed. While the official docket does not reflect such a filing, the trial court obviously received it because the issues were addressed. Further, given the volume of filings in Philadelphia County, it would not be at all surprising to discover that the document was filed, but simply lost in the shuffle.

¶ 5 The possibility of a lost or mis-filed document is amply demonstrated in this record. We note that in June 2001 this case was *non prossed* when the parties failed to appear at the scheduled arbitration hearing. This *non pros* was lifted when it became apparent that a joint request for continuance, duly signed and granted, was never docketed.

¶ 6 The waiver issue is vital in this case because I believe Glazier Supermarkets has raised at least two potentially meritorious claims. First, a review of the record

---

**1.** *Commonwealth v. Lord,* 553 Pa. 415, 719 A.2d 306 (1998) requires we find waiver where the issue is not addressed in a 1925(b) statement. Here we are dealing with an al-

legedly untimely 1925(b) statement. Therefore, the strict waiver rule imposed by *Lord* does not apply.

indicates that the trial court improperly cut off cross-examination of Bryant regarding prior inconsistent statements, particularly those contained in her verified complaint. Then, it also appears from the record that Bryant provided no evidence of negligence on the part of Glazier.

¶ 7 A brief recitation of the facts is in order. On October 7, 1997 Artist Bryant was grocery shopping at the Glazier Shoprite in Philadelphia. While shopping a can or cans fell on her right foot. Subsequently, Bryant developed osteomyelitis that necessitated the amputation of two toes.

¶ 8 At trial, Bryant gave no real explanation for the falling of the canned goods. In an effort to impeach Bryant's credibility, Glazier attempted to cross-examine Bryant on inconsistent statements contained within her complaint. Although Bryant could not explain how the can(s) came to fall, she did testify that they fell from a floor display, which she did not see before the accident. On cross-examination Bryant acknowledged signing the verification of the complaint, but denied any knowledge of the substance of the complaint. Accounts of the accident contained in the complaint included:

1) an allegation that the store failed to control children who had been running about the store, one of whom threw a can at her;

2) an allegation that as she took merchandise from the shelf, a substantial amount of merchandise fell from the shelf, falling on her foot; and

3) an allegation that Glazier was negligent in failing to properly display and stack merchandise.

Bryant could not provide an account of why the cans fell or what caused them to fall. Glazier was entitled to cross-examine Bryant on all the various scenarios she had presented in her complaint in order to cast

doubt on the theory that Glazier had acted negligently. By cutting that cross-examination off, the trial court improperly prevented Glazier from defending itself.

¶ 9 Glazier also claims that because Bryant did not present sufficient evidence of Glazier's negligence or causation to allow the matter to be considered by the jury, the trial court committed reversible error in failing to grant non-suit or JNOV. In its opinion, the trial court properly states that the reviewing court may only reverse a jury's verdict if it is so contrary to the evidence that it shocks one's sense of justice. *Commonwealth v. McNair,* 376 Pa.Super. 604, 546 A.2d 688 (1988). The trial court then lists the evidence that it believes supports the verdict: Bryant pushed her cart through the aisles of the store; ten inch size canned goods fell on Bryant's foot; the canned goods were part of a display and were stacked on the floor; as a result of the injury, two toes were amputated; a representative of Glazier testified the canned goods were stacked in groupings four (4) to five (5) feet high; medical testimony linked the injuries to the falling of the cans. (Trial court opinion at 6–7.) Notably lacking from the recitation of facts is what Glazier did negligently—there was no testimony that the height of the display or placement was improper—or what caused the cans to fall.

¶ 10 Bryant was the sole witness to the happening of her accident. She testified on direct examination as to the events of the day in question:

Q: Why don't you tell the jury what you remember from the accident starting from the time you entered the store until the accident happened?

A: I pushed the cart. After I picked up my merchandise and I didn't realize I didn't had [sic] any money and I would have to go to the bank because I would

have been embarrassed to push it to the front and didn't have any money. So I turned to go around to the bank, and all I remember is when I turned right, left, and then I turned back right, the canned goods was falling on my right foot. N.T. 7/18/01 at 143. Further, on cross-examination:

A: They (the cans) was [sic] on the floor, stacked on the floor.

Q: Were those cans stacked in boxes; do you know?

A: No, they wasn't. [sic]

Q: Do you have any idea of how tall the display was where the cans came from that fell on your right foot?

A: No, I don't have no idea how tall it was.

Q: Now, prior to the time of this accident were you pulling cans off that display?

A: No, I wasn't.

Q: Do you know if your cart hit the display that caused the canned goods to fall?

A: I haven't the slightest idea. I don't know.

N.T. 7/18/01 at 150.

¶ 11 Additionally, the Glazier representative testified that displays were meant to have cardboard between the layers of cans to provide a more stable display. Bryant and her husband both testified that they saw no such cardboard. However, there is no other evidence regarding whether such a set-up is necessary or whether it was in any way improper to fail to place cardboard between the layers or cans. As there was no testimony as to what caused the cans to fall on Bryant's foot, and it is recognized that cans, sitting on cardboard or not, do not leap on their own to the floor, the lack of evidence regarding Glazier's negligence is telling. From the complaint we may discern the cans fell because she took one from the stack, someone threw one at her or maybe she hit the display with her cart. The issue, however, is whether Glazier negligently stacked them and there is no evidence of that.

¶ 12 The lack of evidence regarding negligence, combined with the multiple versions of the accident on which the trial court did not allow inquiry raises questions on the propriety of the verdict and rulings by the trial court. I believe these questions deserve, under the circumstances presented here, a full exploration.

¶ 13 For the foregoing reasons, I dissent and would fully address the issues raised.