J. S66034/18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JAMIL HASSOUNAH | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| LUCIA MARIA RIBERIO De SILVA, | : | No. 1512 EDA 2018 |
| | : | |
| Appellant | : | |

Appeal from the Decree, April 10, 2018,
in the Court of Common Pleas of Northampton County
Civil Division at No. C0048CV-2013-02082

BEFORE: GANTMAN, P.J., PANELLA, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED FEBRUARY 19, 2019**

Lucia Maria Riberio De Silva ("Wife") appeals from the April 10, 2018 divorce decree entered in the Court of Common Pleas of Northhampton County. We affirm.

The record reflects that on September 29, 2016, Wife and Jamil Hassounah ("Husband") appeared before a special master ("master") for an equitable distribution hearing. The master set forth the following:

> The parties stipulated that the date of marriage was January 23, 1993. There was no agreement with regard to the date of separation. Husband contends that the date of separation was December, 2012. Wife contends that it was January or March of 2013.
>
> It is the parties' first marriage. They have one minor child, a daughter, who at the time of hearing was 11 years old.

Husband is controlling and domineering. Wife was simply not credible and [was] unrealistic.

The parties entered into a series of Stipulations with regard to various assets as set forth below.

Wife currently resides in the marital property. The marital home is of significant size. Currently, only Wife and the parties' daughter reside at the marital home.

Husband is an engineer and has had a series of jobs over the years. To find employment, Husband has moved to various places including Canada, Texas, New Jersey, Pennsylvania, and New Hampshire.

The parties had joint accounts at Bank of America. However, when Husband moved to a new location, he would open up a separate bank account through Bank of America at that particularly [sic] location. Husband did so while the parties were married as well as after separation. While wife suggested that this was nefarious, the undersigned makes a specific finding that Husband's method of banking was nothing beyond the controlling actions of a spouse. In other words, Husband set up this system so he would be able to control the flow of money into joint funds. However, although this system would provide Husband the opportunity to prevent funds from being deposited in a joint account, there was no credible evidence that Husband did anything wrong.

Neither party was particularly responsive with regard to discovery. On the date of the hearing, Wife provided a series of documents to Husband. It did not appear that Wife provided these items in discovery. However, the items that Wife was providing were bank records wherein they were Husband's bank records for accounts that he was owner of either in joint name or, for the vast majority of them, in his own name, only. Accordingly, despite the fact that they were late and the production was not timely, over Husband's objection, they were admitted into evidence.

Both parties are originally from Brazil. Husband acknowledged that he sent a significant sum of money to Brazil during the course of the marriage. Wife claims these transfers were done without Wife's knowledge or consent. In addition, the amount of the transfers was at issue. Husband acknowledged that it was $139,000.00. Wife claimed it was more.

Husband was involved in an extramarital affair. In fact, Husband, prior to separation, made a transfer from a marital Bank of America account to Carleen King, the woman with whom he was having the extramarital relationship. This transfer was for $3000.

From the time that the parties moved from Brazil, they moved due to Husband's employment. Husband earned a significant income and continues to do so.

The assets of the parties with their approximate values are as follows:

REAL ESTATE

1.  Marital Residence—4688 Derby Lane, Bethlehem, PA—$310,000.00. There is no mortgage. Wife desires to keep the marital home. Taking into account 3.5% costs of sale, the equity is $299,150.00.

2.  Rental property—124 Founders Court, Bethlehem, PA—net equity: $75,841.00. The parties own a rental property which has a stipulated value of $152,000.00. In addition, this property is subject to a mortgage with a payoff of $76,159.34. The equity in the rental property as of the time of the hearing was approximately $75,841.00. Taking into account 3.5% costs of sale, the equity is $73,187.00.

NON-QUALIFIED ASSETS

3.      Bank of America Interest Checking x8575—titled in Husband's name—$11,121.00 as of date of separation.

4.      Bank of America Money Market Savings x3804—joint names—$56.00 as of date of separation.

5.      Bank of America Money Market Savings x8285—in Husband's name—$3,002.00 as of date of separation.

6.      Bank of America Savings x4878—in Husband's name—$31,353.00 as of date of separation.

7.      TD Bank Mutual Fund x0331—in Husband's name—$3,863.00 as of date of separation.

8.      TD Bank Mutual Fund x8309—in Husband's name—$37,903.00 as of date of separation.

9.      Fidelity Investments x8459—in joint names—$755.00 as of date of separation.

10.     Bank of America x6759—in Wife's name—$558.00

11.     2002 Buick Rendezvous—in Husband's name which Wife drives—$2,522.00.

12.     2008 Honda Accord—in Husband's name—$7,244.00

QUALIFIED ASSETS

13.     Charles Schwab-IRA Rollover x3842—in Husband's name—$286,981.00

14.     St[.] Jude Medical Inc. Retirement Savings Plan 401K—in Husband's name—$3,469,00.

LIABILITIES

1.      Husband has credit card debt at Chase in the amount of $3,058.00.

2.      Husband has credit card debt at Bank of America in the amount of $1,357.00.

3.      Husband has a 2013 IRS debt in his name alone in the amount of $12,000.00.

Master's report, 12/23/16 at 1-6.

The trial court set forth the following procedural history:

Both parties filed timely exceptions to the Master's Report.  The parties presented oral argument on their exceptions on May 30, 2017.  On August 15, 2017, we issued an Order denying [Wife's] exceptions and denying [Husband's] first exception. We granted [Husband's] second exception, correcting the address of the marital home to 4988 Derby Lane, Bethlehem, Pennsylvania.  On September 6, 2017, [Wife] filed a Notice of Appeal to the Superior Court of Pennsylvania from our August 15, 2017 Order of Court.  On October 10, 2017, the Superior Court issued an Order quashing [Wife's] appeal on grounds that this court's August 15, 2017 Order was interlocutory and, therefore, not appealable.  However, the matter became appealable on April 10, 2018, following the entry of the Divorce Decree by Judge Baratta. Accordingly, on May 7, 2018 [Wife] filed a second Notice of Appeal to the Superior Court from the April 10, 2018 Divorce Decree.

Trial court opinion, 6/28/18 at 2-3 (record citations omitted).

The record reflects that the trial court ordered Wife to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Wife timely complied. Thereafter, the trial court filed its Rule 1925(a) opinion.

Wife raises the following issues for our review:

[1.] Did the Master err in allocating the TD Bank mutual fund accounts of [Husband] solely to him as "non–qualified assets" rather than taking them into account as "qualified assets" since they are retirement accounts of [Husband] which represented marital property?

[2.] Did the Master err in his recommendation that the martial [sic] value of all of the Bank of America accounts with the exception of the Bank of America account ending in the numbers 6759 be allocated to [Husband]?

[3.] Did the Master err in his calculation of the martial [sic] estate which did not take into account the full value of the transfers of martial [sic] assets which [Husband] made to family members in Brazil without [Wife's] knowledge or consent?

[4.] Did the Master err in giving [Husband] "credit" against the duration of his alimony obligation for the time period between December of 2012 and October of 2014?

[5.] Did the Master err in his determination of value of the various Bank of America accounts representing martial [sic] property available for equitable distribution?

[6.] Did the Master err in denying [Wife's] claim for attorney's fees?

Wife's brief at 6.[1]

---

[1] We have reordered Wife's issues for ease of disposition.

> A trial court has broad discretion when fashioning an award of equitable distribution. Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. This Court will not find an abuse of discretion unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record. In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.

*Balicki v. Balicki*, 4 A.3d 654, 662-663 (Pa.Super. 2010) (internal citations, quotations and brackets omitted)

Wife first complains that because the master expressed the clear intent in his report to distribute 55 percent of the parties' qualified assets to Wife and because the master mischaracterized the TD Bank mutual fund account as a nonqualified asset, the trial court erred in denying her exception as to the distribution of qualified assets, and she is, therefore, entitled to 55 percent of the TD Bank mutual fund account. Contrary to Wife's assertion, the master clearly set forth his intent in the master's report as follows:

> There are a series of qualified assets which are marital in nature. These shall be subject to a Qualified Domestic Relations Order [(QDRO)]. It is

noted that Husband has post-separation retirement accounts. Utilizing the appropriate factors of the Divorce Code, the undersigned makes a specific finding that Wife is entitled to a disproportionate share of the marital qualified assets, namely, the Charles Schwab IRA Rollover as well as the St. Jude Medical Inc. Retirement Savings Plan. The two marital qualified assets have a value of approximately $290,450.00 of which over 90% is in the Charles Schwab IRA Rollover.

Wife is entitled to a [QDRO] of slightly greater than 55% of the qualified asset, specifically, the fixed figure of $160,000.00 (55% is $159,747.50). The [QDRO] shall be through the Charles Schwab IRA Rollover. The parties are directed to utilize the services of John Hand, Esquire. The parties shall split the costs of the [QDRO] equally.

***In light of the parties' past litigation history, the undersigned desires to ensure that there is no ambiguity with regard to this distribution. Wife shall be entitled to the [QDRO] of $160,000.00 from the Charles Schwab IRA rollover. Husband shall be entitled to the remainder of all of the remaining qualified assets in his name including but not limited to the remainder of the Charles Schwab IRA rollover, the St. Jude Medical Inc. Retirement Savings Plan as well as any and all other qualified assets including any post-separation/non-marital qualified assets.***

***It is noted that the figure of the [QDRO] to Wife is the fixed amount of $160,000.00 and not subject to adjustments, credits, etc. This framework is set forth, on purpose, to prevent the parties from further litigation***.

Master's report, 12/23/16 at 13-14 (emphasis added).

Because this claim entirely lacks record support, it is meritless.

We will simultaneously dispose of Wife's second and third issues, as they both challenge the equitable distribution scheme. Wife complains that the trial court erred in denying her exception to the allocation of liquid assets. Wife also challenges the value of a Bank of America account. Specifically, Wife complains that it was inequitable that she received one Bank of America account totaling $558 while Husband received the balance of the Bank of America accounts, totaling $87,298, when the parties have disparate incomes. (Wife's brief at 30.) Wife further disputes the aggregate value of the Bank of America accounts by claiming that the master ignored evidence that Husband transferred money to family members in Brazil that went "above and beyond the $139,000" that the master concluded that Husband had transferred. (*Id.* at 36.) Wife acknowledges that she received the marital residence, valued at approximately $300,000, but claims that that award "did not in any way limit the ability of the [m]aster to equalize the distribution of liquid assets." (*Id.* at 31.)

With respect to the equitable distribution scheme, the trial court found that:

> [t]he Master distributed the parties' real estate and non-qualified assets to account for [Wife's] preference to keep the parties' former marital home. [Wife] testified before the Master that she wanted to retain possession of the marital home because she was familiar with the area and had a support system nearby.
>
> The parties' former marital residence was valued at $299,150.00. The parties also owned a rental

property with $73,187.00 in equity. Separately, the parties had five Bank of America accounts totaling $46,090.00, two TD Bank Mutual Fund accounts containing $41,766.00, and a Fidelity Investments account containing $755.00. The parties also had two vehicles, a 2002 Buick Rendezvous, worth $2,522.00, and a 2008 Honda Accord, worth $7,244.00.

The Master's Report provided that [Wife] would receive the parties' former marital residence, as she requested. She also received the 2002 Buick Rendezvous and the funds in one Bank of America account, containing $558. Overall, the Master's Report distributes $302,230.00 in assets to [Wife]. [Husband] receives the remaining assets, totaling, $167,729.00. Additionally, the Master attributed the parties' credit card debt and any IRS debt to [Husband]. [Husband] was also responsible for transfers he made to his relatives in Brazil, totaling $139,000.00. Under this allocation, [Wife] received more than 50% of the marital assets.

[Wife] contends that the distribution is inequitable due to the disparity of the parties' respective incomes. We disagree. The Master's Report considered all statutory factors, including the parties' incomes. *See* 23 Pa.C.S.A. § 3502(a)[.] We concur with the Master's recommended distribution, which provides [Wife] with the parties' largest asset, the former marital residence. Therefore, we suggest this claim of error is without merit.

Trial court opinion, 6/28/18 at 10-11 (record citations omitted).

With respect to the equitable distribution scheme, we have reviewed the record and find no abuse of discretion. Regarding Wife's contention that the evidence demonstrated that Husband transferred more than $139,000 to family members in Brazil during time of their marriage, the master found that Wife's testimony on this issue was not credible. (Master's report,

12/23/18 at 12.) The trial court deferred to the master. (Trial court opinion, 6/28/18 at 13.) We have repeatedly reiterated that:

> it is within the province of the trial court to weigh the evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the evidence. We are also aware that a master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties.

***Childress v. Bogosian***, 12 A.3d 448, 455-456 (Pa. Super. 2011) (citations, quotations, and brackets omitted).

We decline Wife's invitation to revisit this credibility determination on appeal.

Wife combines her next two issues and complains that it was error to credit Husband for payments that he made to pay household expenses through a Bank of America account for the 22-month period during which the parties were separated but which preceded Wife's filing her claim for alimony ***pendente lite*** and alimony which depleted the marital value of that Bank of America account and resulted in Husband's receiving a "double dip" credit.[2] (Wife's brief at 21-25.)

---

[2] In her Issue 4 argument, Wife merely states that "[t]he argument covering this issue is set forth above in regard to Wife's Exception to the determination of the duration of Husband's alimony obligation." (Wife's brief at 29.)

- 11 -

We review alimony awards for an abuse of discretion. ***Middleton v. Middleton***, 812 A.2d 1241, 1247 (Pa.Super. 2002). The alimony statute in the Divorce Code provides: "Where a divorce decree has been entered, the court may allow alimony, as it deems reasonable, to either party only if it finds that alimony is necessary." 23 Pa.C.S.A. § 3701(a). The alimony statute lists 17 factors that the court must consider in "determining whether alimony is necessary and in determining the nature, amount, duration and manner of payment of alimony." 23 Pa.C.S.A. § 3701(b).[3] The purpose of

---

[3] The statute provides:

> **(b)** **Factors relevant.--**In determining whether alimony is necessary and in determining the nature, amount, duration and manner of payment of alimony, the court shall consider all relevant factors, including:
>
> (1) The relative earnings and earning capacities of the parties.
>
> (2) The ages and the physical, mental and emotional conditions of the parties.
>
> (3) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.
>
> (4) The expectancies and inheritances of the parties.
>
> (5) The duration of the marriage.

(6) The contribution by one party to the education, training or increased earning power of the other party.

(7) The extent to which the earning power, expenses or financial obligations of a party will be affected by reason of serving as the custodian of a minor child.

(8) The standard of living of the parties established during the marriage.

(9) The relative education of the parties and the time necessary to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment.

(10) The relative assets and liabilities of the parties.

(11) The property brought to the marriage by either party.

(12) The contribution of a spouse as homemaker.

(13) The relative needs of the parties.

(14) The marital misconduct of either of the parties during the marriage. The marital misconduct of either of the parties from the date of final separation shall not be considered by the court in its determinations relative to alimony, except that the court shall consider the abuse of one party by the other party. As used in this paragraph, "abuse"

alimony is not to reward one party and to punish the other, but rather to meet the reasonable needs of the person who is unable to support herself through appropriate employment. ***Grandovic v. Grandovic***, 564 A.2d 960, 965 (Pa.Super. 1989). Alimony following divorce is a secondary remedy and is available only where economic justice and the reasonable needs of the parties cannot be achieved by way of an equitable distribution award and development of an appropriate employable skill. ***Id.***

Here, the master explained the alimony award as follows:

> There was a dispute with regard to the date of separation. Wife filed an alimony and child support obligation through Domestic Relation[s] which began on October, 2014. However, in 2013, Husband contributed approximately $62,000.00 to an account that was utilized by Wife and paid Wife's expenses.

---

> shall have the meaning given to it under section 6102 (relating to definitions).
>
> (15) The Federal, State and local tax ramifications of the alimony award.
>
> (16) Whether the party seeking alimony lacks sufficient property, including, but not limited to, property distributed under Chapter 35 (relating to property rights), to provide for the party's reasonable needs.
>
> (17) Whether the party seeking alimony is incapable of self-support through appropriate employment.

23 Pa.C.S.A. § 3701(b).

In 2014, until the payments were done via Court Order, this figure was $49,000.00. Accordingly, the date of separation is December, 2012 when Husband moved out of the marital home and moved to New Hampshire.

From December 2012, the parties were separated. Husband paid marital expenses such as the property taxes, living expenses, etc. Husband's pattern was to deposit his paycheck into an account controlled by him (alone) and then transfer funds into the joint account for the benefit of the parties.

From the time period that he moved to New Hampshire, Wife controlled the joint account. Wife testified to the contrary. Wife's testimony was not credible. It was not supported by any documentation, to the contrary, it was directly contradicted by all of the documentary evidence provided. Wife received the benefit of the funds transferred into the joint account in 2013 and 2014. The currently [sic] alimony and child support obligation began on [sic] October, 2014.

In a transparent attempt of Wife to claim that Husband had utilized this account, therefore, minimizing his credit and/or pushing back the start of his alimony payments, Wife claims that they were not separated. Wife's claims were without merit.

Accordingly, the date of separation is December of 2012. Husband shall receive credit for alimony payments starting as of the date of separation.

Calculated in Husband's current support obligation is his salary which had an approximate base of $155,000.00 as well as a year-end bonus that he receives in December which has traditionally been approximately $20,000.00 per year.

Notably, Wife desires post-divorce alimony. The current amount of spousal support/alimony pendent lite is $2,193.00 per month. As the date of marriage was January 23, 1993 and the date of

separation is determined by the undersigned to be December, 2012, the parties were married just under 20 years.

Accordingly, Husband shall receive credit from January 1, 2013 moving forward. Accordingly, as of December, 2016, Husband will have paid approximately four years of alimony.

. . . .

The decision to award post-divorce alimony, in light of the Alimony **_Pendente Lite_** paid to date, by reference, incorporates all of the factors set forth in the statute. As many of the factors have been addressed above, they will not be addressed in detail again. However, there are numerous factors which the undersigned has taken into consideration in establishing a post-divorce alimony award. They include, in particular, the following: 1, 3, 7, 10, 12, 14, 16, and 17. Although Wife is receiving greater than 50% of the marital estate, under the circumstances, (and utilizing the factors above) Wife shall receive post-divorce alimony, it is noted that Wife is receiving a disproportionate percentage of the marital estate. Accordingly, Wife shall be entitled to alimony until June 31, 2019 in an amount in accordance with the Northampton County Domestic Relation guidelines. Wife will have received a total of six and one half years of alimony for a marriage approximately 20 years. This is in addition to receiving a disproportionate amount of the non-qualified assets as well as receiving a disproportionate amount of the marital qualified assets.

From a practical perspective, Wife is receiving a sizable retirement account, the house she desires without a mortgage, the vehicle she drives, and an income stream for a total of 6.5 years which is an additional 2.5 years.

For Husband, although he has less [than] 50% of marital component of the retirement accounts, he

has post-separation accounts. He must refinance the Founders Court property within 90 days. If he cannot, it must be listed for sale. In addition, he has less than 50% of the non-qualified accounts, but these are more liquid, but he is also is [sic] responsible for the debt incurred. He is responsible for the transfers to Brazil and to his paramour.

Master's report, 12/23/16 at 17-19.

After reviewing the record, the trial court agreed with:

the Master's determination that [Wife] received the benefit of the funds [Husband] deposited into the parties' joint checking account between December 2012 and October 2014. Over this period, [Wife] received the benefit of approximately $111,000.00, or more than $5,000 per month. The current amount of spousal support/alimony **pendente lite**, set by Domestic Relations, is $2,193.00 per month. Therefore, we believe it was appropriate for the Master to give [Husband] credit toward his alimony obligation dating back to the parties' separation in December 2012.

[Husband] has not received a "'double dip' credit" in the equitable division of marital assets, as [Wife] suggests in her brief. The income [Husband] received after the parties' separation in December 2012 was his separate property. **See** 23 Pa.C.S.A. § 3501(a)(4) ("marital property does not include . . . [p]roperty acquired after final separation until the date of divorce"). [Husband's] contribution to the parties' joint checking account, characterized by the Master as alimony and used primarily for the benefit of [Wife], did not have the effect of reducing the total value of the marital estate. If anything, [Wife] argues that she should obtain a 'double dip credit,' in that she would like to enjoy the benefit of the $111,000.00 [Husband] contributed to the parties' joint checking account and she would like to extend [Husband's] alimony obligation for an additional twenty-two months. We do not believe this remedy is appropriate as the evidence supports the fact that

> [Husband] made the necessary deposits into the parties' joint checking account, and that [Wife] received the full benefit of those funds.

Trial court opinion, 6/28/18 at 6-7 (record citations omitted).

We have carefully reviewed the record and find no abuse of discretion.

Wife finally complains that the trial court erred in denying her request for counsel fees.

> Inasmuch as appellant challenges the award of counsel fees, our standard of review is, once again, an abuse of discretion. Furthermore:
>
>> The purpose of an award of counsel fees is to promote fair administration of justice by enabling the dependent spouse to maintain or defend the divorce action without being placed at a financial disadvantage; the parties must be on par with one another.
>>
>> Counsel fees are awarded based on the facts of each case after a review of all the relevant factors. These factors include the payor's ability to pay, the requesting party's financial resources, the value of the services rendered, and the property received in equitable distribution.
>
> Counsel fees are only to be awarded upon a showing of need. In essence, each party's financial considerations dictate whether such an award is appropriate.

*Gates v. Gates*, 933 A.2d 102, 109 (Pa.Super. 2007) (internal citations and quotations omitted).

Here, the master determined that nothing in the record supported an award of counsel fees. (Master's report, 12/23/16 at 21.) In denying Wife's request for counsel fees, the master concluded that Wife accumulated her attorney's fees for "no defensible reason," that she "took a series of meritless positions," that she failed to comply with discovery rules, and that she failed to demonstrate need. (*Id.* at 21.) We discern no abuse of discretion.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/19/19